**No. 25-3282**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

STEPHANIE SEAGRAVES, *et al.*,

*Plaintiffs-Appellants,*

v.

WASHINGTON DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES, *et al.*,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Washington
No. 3:24-cv-05081-TMC
Honorable Tiffany M. Cartwright

---

**APPELLEES' ANSWERING BRIEF**

---

NICHOLAS W. BROWN
*Attorney General of Washington*

ZACHARY J. PEKELIS
KAI A. SMITH
ERICA CORAY
*Special Assistant Attorneys General*
PACIFICA LAW GROUP LLP
401 Union Ave, Suite 1600
Seattle, WA 98101-2668
Telephone: 206-240-1700
zach.pekelis@pacificalawgroup.com

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........................4

STATEMENT OF THE CASE ............................................................5

    A.    The COVID-19 Pandemic and Proclamation 21-14.......................5

    B.    The Delta Surge and the Proclamation .........................................8

    C.    Unsuccessful Legal Challenges to the Proclamation...................10

    D.    This Court Recently Affirmed Dismissal of a Similar Case.......12

    E.    The Employees' Allegations.................................................14

    F.    Procedural History...............................................................16

        1. The Employees' lawsuit and original complaint...............16

        2. The District Court's dismissal of the original complaint.................................................................17

        3. The District Court's dismissal of the FAC.......................18

STANDARD OF REVIEW .................................................................23

SUMMARY OF ARGUMENT ............................................................24

ARGUMENT ....................................................................................25

I.    The Employees Have Abandoned Their Contracts Clause, Substantive Due Process, and Injunctive Relief Claims .................25

II.    The District Court Correctly Dismissed the Employees' § 1983 Claims for Lack of Personal Participation ...........................................28

III.    The Employees' Claims Also Fail on the Merits and Are Barred by Qualified Immunity ...........................................................34

    A.    The Free Exercise Claim Fails as a Matter of Law and Is Barred by Qualified Immunity ...............................................34

i

      1. DCYF's implementation of the Proclamation was neutral, generally applicable, and satisfies rational basis review ................................................................34

      2. Medical and religious accommodations are not comparable for free exercise purposes ...............................38

      3. The Employees have failed to plausibly allege that the Officials were motivated by religious animus ...................41

      4. The Proclamation did not permit "ad hoc" exemptions by allowing religious and medical accommodations ........45

      5. The alleged availability of reasonable accommodations is irrelevant to the Free Exercise Clause ..........................48

      6. Qualified immunity bars the free exercise claim .............49

  B. The Equal Protection Claim Fails as a Matter of Law and Is Barred by Qualified Immunity........................................................51

      1. The equal protection claim fails on the merits .................51

      2. The equal protection claim is barred by qualified immunity ...............................................................53

  C. The Procedural Due Process Claim Fails as a Matter of Law and Is Barred by Qualified Immunity ...........................................54

      1. The procedural due process claim fails on the merits .....54

      2. The procedural due process claim is barred by qualified immunity .............................................................58

IV. The District Court Correctly Held That Further Amendment of the Employees' Complaint Would Be Futile................................................59

CONCLUSION ..............................................................................................61

STATEMENT OF RELATED CASES .........................................................63

CERTIFICATE OF COMPLIANCE .............................................................64

ii

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Cornejo*,
355 F.3d 1021 (7th Cir. 2004)............................................................52

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)............................................................................50

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................... 24, 30, 41, 42

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003)............................................................49

*Bacon v. Woodward*,
No. 22-35611, 2024 WL 3041850
(9th Cir. June 18, 2024).................................................. 10, 44, 56, 57

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)......................................................22, 61

*Bartholomew v. Washington*,
693 F. Supp. 3d 1107 (W.D. Wash. Sept. 21, 2023)...........................15

*Bates v. Pakseresht*,
146 F.4th 772 (9th Cir. 2025) ............................................... 44, 45, 47

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................. 23, 24, 30

*Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*,
No. CV 22-10242-RGS, 2023 WL 8545141 (D. Mass. Dec. 11, 2023)....7

*Camreta v. Greene*,
563 U.S. 692 (2011).............................................................................50

*Chavez v. Robinson*,
12 F.4th 978 (9th Cir. 2021) .............................................................60

*Child.'s Health Defense, Inc. v. Rutgers, State Univ. of N.J.*,
  93 F.4th 66 (3d Cir. 2024) ........................................................ 27

*Child.'s Health Defense v. FDA*,
  No. 23-50167, 2024 WL 244938 (5th Cir. Jan. 23, 2024) .................. 6, 7

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ............................................................. 35, 42

*Church v. Biden*,
  573 F. Supp. 3d 118 (D.D.C. 2021) .............................................. 6

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ................................................................ 53

*Clark v. Jackson*,
  No. 22-5553, 2023 WL 2787325 (6th Cir. Apr. 5, 2023) .......... 57, 58, 59

*Cleveland Board of Education v. Loudermill*,
  470 U.S. 532 (1985) ......................................................... 13, 54, 55

*Collins v. City of San Diego*,
  841 F.2d 337 (9th Cir. 1988) ..................................................... 60

*Cornel v. Hawaii*,
  37 F.4th 527 (9th Cir. 2022) ................................................. 17, 28

*Crawford-El v. Britton*,
  523 U.S. 574 (1998) ................................................................ 42

*Curtis v. Inslee*,
  154 F.4th 678 (9th Cir. 2025) ............................................ 55, 56, 58

*Detwiler v. Mid-Columbia Med. Ctr.*,
  --- F.4th ----, No. 23-3710, 2025 WL 2700000
  (9th Cir. Sept. 23, 2025) .......................................................... 31

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) ............................................................... 50, 53

*Doe v. San Diego Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021) ............................................... passim

iv

*Doe v. San Diego Unified Sch. Dist.*,
22 F.4th 1099 (9th Cir. 2022) ..............................................................39

*Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021)...................................................... passim

*Emp. Div., Dep't of Hum. Res. v. Smith*,
494 U.S. 872 (1990)...........................................................................35

*Endres v. Indiana State Police*,
349 F.3d 922 (7th Cir. 2003).............................................................48

*Florida v. Dep't of Health & Hum. Servs.*,
19 F.4th 1271 (11th Cir. 2021) .............................................................5

*Fulton v. City of Phila.*,
593 U.S. 522 (2021)................................................................ 39, 46, 47

*Grabowski v. Ariz. Bd. of Regents*,
69 F.4th 1110 (9th Cir. 2023) ............................................................50

*Gray v. Wash. Dep't of Transp.*,
No. 3:23-CV-05418-DGE, 2023 WL 6622232
(W.D. Wash. Oct. 11, 2023)......................................................... 12, 13

*Gray v. Wash. Dep't of Transp.*,
No. 23-3278, 2024 WL 5001484 (9th Cir. Dec. 6, 2024) ............. passim

*Groff v. DeJoy*,
600 U.S. 447 (2023)...........................................................................15

*Halgren v. City of Naperville*,
577 F. Supp. 3d 700 (N.D. Ill. 2021)..................................................54

*Han v. U.S. Dep't of Justice*,
45 F.3d 333 (9th Cir. 1995)................................................................28

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)......................................................................49, 50

*Harris v. Univ. of Mass., Lowell*,
557 F. Supp. 3d 304 (D. Mass. 2021)..................................................37

*Health Freedom Def. Fund, Inc. v. Carvalho,*
  148 F.4th 1020 (9th Cir. 2025) (en banc) ................................. 8, 27, 53

*Hydrick v. Hunter,*
  669 F.3d 937 (9th Cir. 2012) ...................................................... 29

*In re Finjan Holdings, Inc.,*
  58 F.4th 1048 (9th Cir. 2023) ..................................................... 24

*Jacobson v. Massachusetts,*
  197 U.S. 11 (1905) .................................................. 21, 26, 27, 35

*Jones v. Williams,*
  297 F.3d 930 (9th Cir. 2002) ...................................................... 28

*Kane v. De Blasio,*
  19 F.4th 152 (2d Cir. 2021) ................................................ 31, 36, 53

*Kheriaty v. Regents of Univ. of Cal.,*
  No. SACV 21-01367 JVS (KESx), 2021 WL 4714664
  (C.D. Cal. Sept. 29, 2021) ......................................................... 54

*Kisela v. Hughes,*
  584 U.S. 100 (2018) .................................................................. 50

*Klaasen v. Trs. of Ind. Univ.,*
  7 F.4th 592 (7th Cir. 2021) ................................................... 27, 53

*Klein v. Scott,*
  481 F. App'x 347 (9th Cir. 2012) ................................................. 59

*Leer v. Murphy,*
  844 F.2d 628 (9th Cir. 1988) .................................................. 28, 29

*Litmon v. Harris,*
  768 F.3d 1237 (9th Cir. 2014) ................................................ 29, 33

*LSO, Ltd. v. Stroh,*
  205 F.3d 1146 (9th Cir. 2000) .................................................... 50

*Lubetsky v. Applied Card Sys., Inc.,*
  296 F.3d 1301 (11th Cir. 2002) ................................................... 43

*Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .............................................................. 23

*Martinez v. City of Clovis*,
943 F.3d 1260 (9th Cir. 2019) ..................................................... 56, 59

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*,
584 U.S. 617 (2018) .................................................................... 42, 44

*Nikolao v. Lyon*,
875 F.3d 310 (6th Cir. 2017) ...................................................... 35, 37

*Nunes v. Ashcroft*,
375 F.3d 805 (9th Cir. 2004) .............................................................. 24

*Olson v. California*,
104 F.4th 66 (9th Cir. 2024) (en banc) ............................................... 52

*Orin v. Barclay*,
272 F.3d 1207 (9th Cir. 2001) ..................................................... 20, 51

*Parratt v. Taylor*,
451 U.S. 527 (1981) ........................................................................... 28

*Phillips v. City of N.Y.*,
775 F.3d 538 (2d Cir. 2015) .............................................................. 35

*Pilz v. Inslee*,
No. 3:21-CV-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022) .................................................................................... 11, 15

*Pilz v. Inslee*,
No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023) .......... passim

*Pinson v. Ivey*,
801 F. App'x 591 (9th Cir. 2020) ...................................................... 25

*Prince v. Massachusetts*,
321 U.S. 158 (1944) ........................................................................... 34

*R.W. v. Columbia Basin College*,
77 F.4th 1214 (9th Cir. 2023) ........................................................... 17

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................ 34

*Rodriguez v. Santa Clara Valley Transportation Auth.*,
  No. 23-CV-01379-HSG, 2024 WL 4778049
  (N.D. Cal. Nov. 12, 2024) ................................................................... 37

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*,
  80 F.4th 1011 (9th Cir. 2023) ..................................................... 23, 49

*Shrum v. City of Coweta*,
  449 F.3d 1132 (10th Cir. 2006) .......................................................... 48

*Slidewaters LLC v. Wash. Dep't of Labor & Indus.*,
  4 F.4th 747 (9th Cir. 2021) ................................................................. 6

*Spivack v. City of Phila.*,
  109 F.4th 158 (3d Cir. 2024) ...................................................... 39, 47

*Stormans, Inc. v. Weisman*,
  794 F.3d 1064 (9th Cir. 2015) ........................................................... 47

*Taylor v. Washington Dep't of Corr.*,
  No. C23-6186-MLP, 2024 WL 4529236
  (W.D. Wash. Oct. 18, 2024) ............................................................... 12

*Thompson v. Rahr*,
  885 F.3d 582 (9th Cir. 2018) ............................................................. 61

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ............................................................. 61

*United States v. Kimble*,
  107 F.3d 712 (9th Cir. 1997) ............................................................. 27

*United States v. Locke*,
  471 U.S. 84 (1985) ............................................................................ 56

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................................... 5

*United States v. United Healthcare Ins. Co.*,
 848 F.3d 1161 (9th Cir. 2016) .............................................................24

*Washington v. Davis*,
 426 U.S. 229 (1976) ............................................................................52

*We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
 76 F.4th 130 (2d Cir. 2023) ........................................................ 40, 53

*We The Patriots USA, Inc. v. Hochul*,
 17 F.4th 266 (2d Cir. 2021) ........................................................ passim

*Weisbuch v. Cnty. of L.A.*,
 119 F.3d 778 (9th Cir. 1997) ..............................................................29

*Williams v. Brown*,
 567 F. Supp. 3d 1213 (D. Or. 2021) ...................................................53

*Wise v. Inslee*,
 No. 2:21-CV-0288-TOR, 2021 WL 4951571
 (E.D. Wash. Oct. 25, 2021) ........................................................... 9, 53

*Wise v. Inslee*,
 No. 2:21-CV-0288-TOR, 2022 WL 1243662
 (E.D. Wash. Apr. 27, 2022) ................................................................10

*Workman v. Mingo Cnty. Bd. of Educ.*,
 419 F. App'x 348 (4th Cir. 2011) ........................................................35

**State Cases**

*Colvin v. Inslee*,
 467 P.3d 953 (Wash. 2020) ...................................................................6

**Federal Statutes**

28 U.S.C. § 1291 ........................................................................................3

28 U.S.C. § 1367(a) ....................................................................................4

28 U.S.C. § 1331 ........................................................................................4

ix

28 U.S.C. § 1343 ........................................................................... 4

42 U.S.C. § 1983 ......................................................................... 29

42 U.S.C. § 2000e(j) .................................................................... 15

**Washington State Constitutional Provisions**

Wash. Const. art. I, § 11 ............................................................. 18

**Washington State Statutes**

Wash. Rev. Code § 43.06.010(12) ............................................... 6

Wash. Rev. Code § 49.52.070 ..................................................... 17

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................. 23

**Other Authorities**

Proclamation 21-14 ..................................................................... 1

## INTRODUCTION

Responding to a sharp rise in COVID-19 cases, hospitalizations, and deaths in summer 2021, Washington's Governor signed several emergency proclamations to address the worsening public health crisis, including Proclamation 21-14 (together with subsequent iterations, the Proclamation). The Proclamation prohibited most state employees from working after October 18, 2021, unless they were vaccinated against COVID-19 or had received an accommodation on medical or religious grounds.

Appellants are seventeen former employees of Appellee Washington State Department of Children, Youth, and Families (DCYF) who declined to be vaccinated against COVID-19 (the Employees). The Employees sought religious accommodations from the Proclamation, though at no point in the litigation have they provided any specifics as to what their beliefs even are. Ultimately, DCYF denied the Employees' accommodation requests because it determined that allowing them to remain unvaccinated in their roles would create an undue hardship for the agency.

The Employees brought suit against DCYF and its then-Secretary, Ross Hunter. In their original complaint, the Employees asserted a scattershot of twenty-two causes of action—some of which they combined into single counts—raising various federal constitutional claims, Washington state constitutional claims, and statutory, tort, and

1

administrative claims under Washington law. (The Employees did not plead a claim under Title VII.) The District Court initially dismissed all twenty-two claims, some with prejudice and some without, while granting the Employees leave to amend to "plead facts explaining Secretary Hunter's personal involvement in the alleged constitutional violations."

The Employees then filed a First Amended Complaint (FAC), repleading nine claims and adding as defendants two additional DCYF employees—Human Resources Director Marcos Rodriguez and Assistant Secretary of Partnership, Prevention, and Services Vickie Ybarra (together with Secretary Hunter, the Officials). Of the two dozen claims the Employees asserted between their two complaints, their Opening Brief substantively addresses only three: their free exercise, procedural due process, and equal protection claims brought against the Officials in their personal capacities.

They have thus abandoned all but those three claims. And the District Court correctly dismissed them, holding that the FAC failed to allege facts demonstrating any Official's personal participation in violating any Employee's constitutional rights. The Employees vaguely assert, as they did below, that the Officials are liable for "concoct[ing]" and "design[ing]" DCYF's policy implementing the Proclamation. Op. Br. at 25. But they fail to describe the actual policy that purportedly violated their rights. And their remaining allegations of the Officials'

2

participation in constitutional violations are conclusory and unsupported.

Further, the Employees' three constitutional theories all fail as a matter of law—as the District Court also held—and are barred by qualified immunity. Consistent with other circuits' decisions, this Court has rejected multiple challenges to the Proclamation's implementation raising the same claims and arguments the Employees raise here. The Employees fail to even cite those cases, let alone make any effort to distinguish them. And those indistinguishable cases demonstrate that the Employees simply have no colorable free exercise, equal protection, or due process claim arising from DCYF's implementation of the Proclamation. Because the Employees cite no other case of this Court or the Supreme Court that remotely suggests otherwise, they cannot show a violation of their clearly established constitutional rights so as to overcome the Officials' qualified immunity, which provides yet another alternative ground on which to affirm the District Court's decision.

Finally, having properly dismissed the FAC, the District Court correctly denied leave to amend, finding no indication that additional factual allegations could cure the FAC's deficiencies. This Court should affirm the dismissal of all claims with prejudice.

## JURISDICTIONAL STATEMENT

The Employees are correct that this Court has appellate jurisdiction under 28 U.S.C. § 1291, and that the District Court had

3

original jurisdiction under 28 U.S.C. §§ 1331 and 1343 as to their federal claims. Having dismissed all federal claims, the District Court exercised its discretion to decline to assert supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the Employees abandon all claims except their free exercise, procedural due process, and equal protection claims against the Officials in their individual capacities by failing to address the District Court's dismissal of all other claims in their Opening Brief?

2. Did the District Court correctly dismiss the free exercise, procedural due process, and equal protection claims against the Officials because the FAC fails to allege that any Official personally participated in a violation of any Employee's constitutional rights?

3. Did the District Court correctly hold that the Employees failed to state a claim for violation of their free exercise, procedural due process, and equal protection rights where this Court's decisions have repeatedly rejected on the merits such challenges to the implementation of COVID-19 vaccination policies, finding no plausible allegations of constitutional violations?

4. Alternatively, was the dismissal of the constitutional claims against the Officials proper under the doctrine of qualified immunity given the absence of any clearly established law showing the Employees' rights were violated?

5.      Did the District Court correctly deny the Employees leave to file a second amended complaint because it would have been futile?

## STATEMENT OF THE CASE

This Statement of the Case is based on the allegations contained in the FAC, documents incorporated therein by reference, and judicially noticeable facts contained in the reports of governmental public health authorities, including the U.S. Food and Drug Administration (FDA), the U.S. Centers for Disease Control and Prevention (CDC), and the Washington State Department of Health (DOH). *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Appellees respectfully request that this Court take judicial notice of these materials, as they asked the District Court. 3-ER-528.

### A. The COVID-19 Pandemic and Proclamation 21-14

The COVID-19 pandemic was the "deadliest" in "American history." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1275 (11th Cir. 2021) (citation omitted). In just two and a half years, the highly contagious respiratory virus caused over six million hospitalizations and 1.1 million deaths in the United States.[1] In response to the public health emergency, "[g]overnments at all levels instituted restrictions to curb the

---

[1] CDC, *COVID Data Tracker*, Trends in United States COVID-19 Hospitalizations, Deaths, Emergency Department (ED) Visits, and Test Positivity by Geographic Area, https://covid.cdc.gov/covid-data-tracker/#trends_select_select_00 [https://perma.cc/V36S-J7AZ ] (last visited Oct. 31, 2025).

transmission of the virus." *Slidewaters LLC v. Wash. Dep't of Labor & Indus.*, 4 F.4th 747, 752 (9th Cir. 2021).

In Washington State, then-Governor Jay Inslee proclaimed a state of emergency on February 29, 2020. *Id.* at 753.[2] The Governor's "emergency proclamation unlock[ed]" his "broad" emergency powers in "response to a disaster that threatens 'life, health, property, or the public peace.'" *Colvin v. Inslee*, 467 P.3d 953, 962 (Wash. 2020) (quoting Wash. Rev. Code § 43.06.010(12)).

One of the primary tools Washington State used to stem the spread of COVID-19 was vaccination. Between December 2020 and February 2021, the FDA issued Emergency Use Authorizations (EUAs) for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson. *Child.'s Health Defense v. FDA*, No. 23-50167, 2024 WL 244938, at *1 (5th Cir. Jan. 23, 2024) (per curiam) (citing 86 Fed. Reg. 5200, 5204, 5214 (Jan. 19, 2021)); *Church v. Biden*, 573 F. Supp. 3d 118, 126 (D.D.C. 2021)).[3] FDA gave full approval to Pfizer's vaccine (to be marketed as

---

[2] Governor Inslee was succeeded by current Governor Bob Ferguson, who was sworn in on January 15, 2025.

[3] *See also* FDA, *Moderna COVID-19 Vaccine*, https://www.fda.gov/vaccines-blood-biologics/coronavirus-covid-19-cber-regulated-biologics/moderna-covid-19-vaccine [https://perma.cc/M6DS-7P29] (last visited Aug. 21, 2025); FDA, *Comirnaty and Pfizer-BioNTech COVID-19 Vaccine*, https://www.fda.gov/vaccines-blood-biologics/coronavirus-covid-19-cber-regulated-biologics/pfizer-biontech-covid-19-vaccine [https://perma.cc/9ZKN-N2VN] (last visited Oct. 31, 2025); FDA, *Janssen COVID-19 Vaccine*, https://www.fda.gov/vaccines-

"Comirnaty") for people 16 and older on August 23, 2021, and to Moderna's vaccine for people 18 and older on January 31, 2022. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 283 (2d Cir. 2021) (citing FDA, *FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine [https://perma.cc/SR8Y-UEEY]), *opinion clarified*, 17 F. 4th 368 (2d Cir. 2021); *Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*, No. CV 22-10242-RGS, 2023 WL 8545141, at \*2 (D. Mass. Dec. 11, 2023) (citing FDA, *Coronavirus (COVID-19) Update: FDA Takes Key Action by Approving Second COVID-19 Vaccine* (Jan. 31, 2022), *available at* https://www.prnewswire.com/news-releases/coronavirus-covid-19-update-fda-takes-key-action-by-approving -second-covid-19-vaccine-301471678.html [https://perma.cc/GK82-3B24]), *appeal docketed*, No. 24-1063 (1st Cir.). The CDC considers the vaccines to be safe and effective in reducing the risk of severe illness or death due to COVID-19.[4]

---

blood-biologics/coronavirus-covid-19-cber-regulated-biologics/janssen-covid-19-vaccine [https://perma.cc/JXA2-JP3C] (last visited Oct. 31, 2025).

[4] CDC, *COVID-19 Vaccine Basics* (Sept. 3, 2024), https://www.cdc.gov/covid/vaccines/how-they-work.html [https://perma.cc/H6NB-NKV8] (last visited Oct. 31, 2025); CDC, *COVID-19 Vaccine Effectiveness* (Sept. 10, 2024), https://www.cdc.gov/covid/vaccines/covid-19-vaccine-effectiveness.html [https://perma.cc/3W2T-BAK2] (last visited Oct. 31, 2025).

**B. The Delta Surge and the Proclamation**

In summer 2021, the "Delta variant" emerged—a new, highly infectious COVID-19 strain. *See Does 1-6 v. Mills*, 16 F.4th 20, 26–27 (1st Cir. 2021). Twice as infectious as earlier variants, *id.*, Delta spread like wildfire, causing Washington's weekly COVID-19 hospitalizations to more than quadruple from July 3 to September 4, 2021.[5]

In summer and fall 2021, "health experts [were] recommending that individuals get COVID-19 vaccinations and [were] reporting that such vaccinations are effective in preventing and spreading the disease." *Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1024 (9th Cir. 2025) (en banc) (noting that in July 2021 the CDC "reported that COVID-19 vaccines are highly effective at protecting vaccinated people against symptomatic and severe COVID-19, and fully vaccinated people are less likely to become infected and less likely to get and spread SARS-CoV-2") (citation modified). As the CDC explained in August 2021, "[t]he Delta variant causes more infections and spreads faster than earlier forms of the virus that causes COVID-19," but "[v]accines continue to reduce a person's risk of contracting the virus that causes COVID-19, including this variant."[6] And, according to a September 2021 CDC report,

---

[5] CDC, COVID Data Tracker, *supra* note 1.

[6] CDC, *Benefits of Getting a COVID-19 Vaccine*, Aug. 16, 2021, https://web.archive.org/web/20211018080349/https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html [https://perma.cc/9TQR-R7X4?type=image] (web archive from Oct. 18, 2021).

unvaccinated people were five times more likely to contract, ten times more likely to be hospitalized with, and eleven times more likely to die from COVID-19 than those who were fully vaccinated.[7] Despite these findings and recommendations of public health authorities, the Delta surge coincided with a steady decline in vaccination rates in Washington State.[8]

On August 9, 2021, Governor Inslee issued the Proclamation, prohibiting healthcare providers, most state employees, and (later) educators from working after October 18, 2021, without being vaccinated against COVID-19.[9] When it took effect, the Proclamation applied to at least 681,000 workers across those three covered sectors. *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *1 (E.D. Wash. Oct. 25, 2021). The Proclamation required covered employers to evaluate requests for medical and religious exemptions and provide reasonable accommodations consistent with state and federal antidiscrimination

---

[7] CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions*, April 4–July 17, 2021 (Sept. 17, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7037e1.htm?s_cid=mm7037e1_w [https://perma.cc/NUM8-ECUL].

[8] DOH, *Respiratory Illness Data Dashboard*, COVID-19 Vaccinations in Washington State, https://doh.wa.gov/data-and-statistical-reports/diseases-and-chronic-conditions/communicable-disease-surveillance-data/respiratory-illness-data-dashboard#Vaccination [https://perma.cc/JEJ8-K94S] (last visited Oct. 31, 2025).

[9] Office of Wash. Governor Jay Inslee, Procl. 21-14.1 at 4–5 (Aug. 20, 2021), https://governor.wa.gov/sites/default/files/proclamations/21-14.1%20-%20COVID-19%20Vax%20Washington%20Amendment.pdf.

statutes.[10] Covered employers were "prohibited from providing accommodations" if the employee's request was "based on false, misleading, or dishonest grounds or information" or "the personal preference of the individual," rather than "an inability to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance."[11]

### C. Unsuccessful Legal Challenges to the Proclamation

Shortly after the Proclamation was issued, multiple lawsuits were filed in state and federal courts challenging it as facially unconstitutional under a variety of theories—including several raised by the Employees here. None of these facial challenges succeeded. *See, e.g.*, *Bacon v. Woodward* (*Bacon II*), No. 22-35611, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024) (affirming dismissal of facial challenge to Proclamation but remanding as to as-applied free exercise claim); *Pilz v. Inslee* (*Pilz II*), No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023) (affirming dismissal of facial challenge to Proclamation that raised, inter alia, free exercise, contracts clause, due process, and employment discrimination claims); *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2022 WL 1243662, at *1 (E.D. Wash. Apr. 27, 2022), *appeal dismissed*, No. 22-35426, 2022 WL 17254335 (9th Cir. Oct. 7, 2022) (same).

---

[10] Procl. 21-14.1, *supra* note 9, at 5–6.

[11] *Id.* at 6.

10

In *Pilz II*, for example, this Court affirmed the dismissal on the pleadings of a lawsuit brought by approximately 100 plaintiffs— including several of the Employees here—who had been separated from employment with state agencies or other employers pursuant to the Proclamation. *Pilz II*, 2023 WL 8866565, at *2. The *Pilz* district court emphasized "how totally ineffective this forum would be for resolving the individual claims of 100 plaintiffs" with "little in common except their opposition to the vaccine requirement." *Pilz v. Inslee* (*Pilz I*), No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *3 (W.D. Wash. May 27, 2022). The district court therefore construed the complaint to raise "only a facial challenge to the Proclamation," which it rejected on all counts. *Id.* In affirming the district court, this Court determined that the Proclamation was "neutral," "generally applicable," and "rationally related" to the goal of "stemming the spread of COVID-19," so it did not violate the Free Exercise Clause. *Pilz II*, 2023 WL 8866565, at *2 (citation modified).

In August 2022, as COVID-19 cases ebbed, Governor Inslee announced termination of the Proclamation and the underlying state of emergency, effective October 31, 2022.[12]

---

[12] *See* Office of Wash. Governor Jay Inslee, Procl. 21-14.6 at 2, https://governor.wa.gov/sites/default/files/proclamations/21-14.6%20-%20COVID%20Vaccination%20Requirement_Rescission_%28tmp%29.pdf (Oct. 28, 2023); Office of Wash. Governor Jay Inslee, Procl. 20-05.1, https://governor.wa.gov/sites/default/files/proclamations/20-05.1_%20 Coronavirus%20RESCISSION_%28tmp%29.pdf (Oct. 28, 2023).

### D. This Court Recently Affirmed Dismissal of a Similar Case

Litigation over the Proclamation continued, including through multi-plaintiff lawsuits like this one, purportedly challenging the Proclamation's implementation by state agencies. *See, e.g., Taylor v. Washington Dep't of Corr.*, No. C23-6186-MLP, 2024 WL 4529236, at *3 (W.D. Wash. Oct. 18, 2024) *appeal docketed*, No. 24-7120 (9th Cir. November 25, 2024) (dismissing free exercise, due process, and equal protection claims against plaintiffs' former employer). Recently, this Court affirmed dismissal of a similar lawsuit brought by sixty former employees of the Washington State Department of Transportation (WSDOT) following their separation from employment pursuant to the Proclamation. *Gray v. Wash. Dep't of Transp.* (*Gray II*), No. 23-3278, 2024 WL 5001484, at *2 (9th Cir. Dec. 6, 2024), *cert. denied*, No. 24-1079, 2025 WL 1603620 (U.S. June 6, 2025). Like the plaintiffs in *Pilz, Taylor*, and this case, the *Gray* plaintiffs raised free exercise, due process, and equal protection claims—and, in all four cases, were represented by the same counsel.

The *Gray* district court granted the agency's motion to dismiss, dismissing all claims. *Gray v. Wash. Dep't of Transp.* (*Gray I*), No. 3:23-CV-05418-DGE, 2023 WL 6622232, at *2–6 (W.D. Wash. Oct. 11, 2023). It held that the individual officials were entitled to qualified immunity against the free exercise, due process, and equal protection claims because the plaintiffs failed to establish a violation of their clearly

established rights. *Id.* at \*3–5 (holding, with regard to free exercise claim, the officials' actions did not violate a clearly established right; rather, "the caselaw suggests the opposite"). The Court also held that sovereign immunity barred all federal claims against WSDOT and qualified immunity barred the Contracts Clause and Takings Clause claims. *Id.* at \*2, 5. Having dismissed all federal claims with prejudice, the district court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. *Id.* at \*6.

This Court affirmed. *Gray II*, 2024 WL 5001484, at \*2. Considering plaintiffs' procedural due process claim, which was premised on *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Court was "doubtful" that *Loudermill* "could be read as clearly established law with respect to the accommodation process." 2024 WL 5001484, at \*1. Even if *Loudermill* applied, however, the Court determined that plaintiffs "received as much notice and process as the law required" where they "received notice of the vaccination policy, the exemption and accommodation decision, and the potential for termination" and were given "'pretermination opportunit[ies] to respond' via written submissions and meetings." *Id.* (alteration in original) (quoting *Loudermill*, 470 U.S. at 542).[13]

---

[13] The Court also held that the plaintiffs forfeited the issue of qualified immunity as to the free exercise and equal protection claims, and affirmed denial of leave to amend, holding that the plaintiffs' proposed amendments would not have cured the complaint's deficiencies. *Id.* at \*2.

**E. The Employees' Allegations**

Approximately three months after the district court dismissed *Gray I*, the Employees filed this lawsuit. *See* 4-ER-573. During their DCYF employment, the Employees held a variety of roles with the agency, which oversees services that support children and their families' health, resilience, and educational outcomes, including child protective services, foster care, and early childhood education. 7-ER-1584–1603 ¶¶ 14–30.[14] Many of the Employees worked directly with youth in DCYF facilities, including as a juvenile rehabilitation residential counselor, registered nurse, youth camp associate superintendent, and security officer. 7-ER-1587–89; 7-ER-1598; 7-ER-1602 ¶¶ 16–18, 26, 29. Other Employees worked in a variety of other roles including fiscal specialist, adoption specialist, and social service specialist. 7-ER-1585–1604 ¶¶ 14–30. Each Employee sought a religious exemption and accommodation from DCYF's vaccination requirement. 7-ER-1585–1604 ¶¶ 14–30. However, in neither their original complaint nor their FAC did any of the Employees describe what their religious beliefs are or how these purported beliefs conflicted with the vaccination requirement. *See* 7-ER-1585–1604 ¶¶ 14–30.

In processing the Employees' requests, DCYF first considered whether each was entitled to an exemption—i.e., whether they had asserted a sincerely held religious belief or medical issue precluding

---

[14] Wash. State Dep't of Children, Youth & Families, *About Us*, https://dcyf.wa.gov/about/about-us (last visited Oct. 29, 2025).

14

vaccination against COVID-19. *See, e.g.*, 5-ER-906 (DCYF letter stating "[y]our request [for a religious exemption] has been reviewed and approved"). Each of the Employees was granted a religious exemption. *See* 7-ER-1608 ¶ 54.

Next, DCYF considered whether employees eligible for exemptions could be accommodated without undue hardship to the agency. 4-ER-786 (DCYF letter stating "you are entitled to the accommodation process," which included "evaluat[ing] the essential functions, job classification, and working environment of your position as well as business and workplace safety requirements"); *see, e.g.*, *Pilz I*, 2022 WL 1719172, at *2 ("Once an exemption is granted, the agency decides whether an accommodation can be made without imposing 'undue hardship' on the agency."); *see generally Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) ("Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

Upon review of their roles, DCYF determined that the Employees could not be accommodated without causing the agency undue hardship; however, some of the Employees were offered the accommodation of reassignment. *See* 7-ECF-1590, 7-ECF-1592; 7-ECF-1600; *see generally Bartholomew v. Washington*, 693 F. Supp. 3d 1107, 1115 (W.D. Wash. Sept. 21, 2023) (dismissing failure-to-accommodate religion claim where

15

state agency offered employee with religious objection to COVID-19 vaccine an "offer of reassignment," which "can be a reasonable accommodation").

As the Employees acknowledged in the FAC, DCYF notified each Employee of its decision to grant or deny their exemption request. *See, e.g.*, 5-ER-906–07; 5-ER-909–10. DCYF also informed each Employee that no reasonable accommodation was possible based on their position with DCYF and provided information on reassignment where applicable. *See, e.g.*, 5-ER-906–07; 5-ER-909–10. Specifically, DYCF "determined that performing the essential functions of [their] position[s] unvaccinated [would] pose[] a threat to the health or safety of others in the workplace[,] . . . includ[ing] children and families." *E.g.*, 5-ER-906; 5-ER-909. All Employees were separated from DCYF because, by October 18, 2021, they neither had been vaccinated against COVID-19 nor received an accommodation. *See* 5-ER-909.

## F. Procedural History

### 1. The Employees' lawsuit and original complaint

The Employees initially filed suit on January 30, 2024, naming DCYF and Secretary Hunter as defendants. 4-ER-573. As relief, the Employees sought unspecified damages, attorney fees, and a wide-ranging injunction requiring "reinstatement for those [Employees] who desire to return to their previous positions." 4-ER-702–03. The original complaint alleged twenty-two distinct claims against DCYF and

16

Secretary Hunter, some couched within single causes of actions. 4-ER-669–702. These claims included violations of the U.S. and Washington constitutions; a § 1983 claim for "investigational drug use"; claims under the Washington Law Against Discrimination (WLAD), Wash. Rev. Code ch. 49.60; a state "public policy tort claim against religious discrimination"; a statutory wage theft claim under state law, Wash. Rev. Code § 49.52.070; and a claim invoking the "right to be free from arbitrary and capricious action." 4-ER-669–702.

**2. The District Court's dismissal of the original complaint**

DCYF and Secretary Hunter moved to dismiss the original complaint. 3-ER-513. After a hearing, the District Court issued an order dismissing all claims and granting Employees leave to amend. 2-ER-150. The District Court ruled that DCYF, as a state agency, is not a "person" subject to liability under § 1983 and dismissed the § 1983 claims against DCYF with prejudice. 2-ER-154 (citing *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022)). The District Court also dismissed the federal constitutional claims brought against Secretary Hunter in his official capacity as barred by the Eleventh Amendment. 2-ER-154. The District Court then dismissed without prejudice the § 1983 claim for injunctive relief against Secretary Hunter in his official capacity because the Employees did not allege an "ongoing violation of federal law." 2-ER-154 (citing *R.W. v. Columbia Basin College*, 77 F.4th 1214, 1221 (9th Cir. 2023)). Finally, the District Court dismissed without prejudice the § 1983

17

damages claims against Secretary Hunter in his personal capacity, holding that the Employees "fail[ed] to adequately identify how Hunter personally participated in violating each [Employees'] rights for each cause of action." 2-ER-155.[15] The District Court granted the Employees leave to amend. 2-ER-157.

The Employees filed the FAC on October 14, 2024. 7-ER-1581. The FAC added two more DCYF officials as defendants: Human Resources Director Marcos Rodriguez and Assistant Secretary of Partnership, Prevention, and Services Vickie Ybarra. 7-ER-1584. The FAC included four federal constitutional claims under § 1983: (i) free exercise; (ii) procedural due process (iii) equal protection, and (iv) Contracts Clause. 7-ER-1612–27; 7-ER-1633–34. The FAC also asserted state law claims for violations of (v) religious exercise under Article I, section 11 of the Washington Constitution; (vi) due process under Article I, section 3; (vii) equal protection under Article I, section 12; (viii) the right to privacy under Article I, section 7; and (ix) the WLAD. 7-ER-1620–21; 7-ER-1624; 7-ER-1627–33.

### 3. The District Court's dismissal of the FAC

DCYF and the Officials moved to dismiss the FAC. The District Court granted the motion, dismissing the Employees' federal claims with

---

[15] The District Court also dismissed with prejudice the Employees' investigational drug use and takings claims because they failed to oppose dismissal of those claims, thus abandoning them. 2-ER-154.

prejudice and declining to exercise supplemental jurisdiction over the state law claims. 1-ER-7–8.

As to the free exercise claim, the District Court first determined that the Employees had again failed to "adequately identify how [the Officials] personally participated in violating [the Employees'] free exercise rights" where "nearly all [of the Employees'] allegations [were] conclusory." 1-ER-14. The District Court further held that text messages and emails sent by Secretary Hunter—which the Employees had argued evidenced hostility towards religion—simply showed that "he intended for DCYF to *follow* its statutory obligations on religious exemptions" and did not "plausibly allege any intent to selectively burden . . . religious beliefs." 1-ER-16–17. The District Court then determined that the "claims against Rodriguez and Ybarra [were] even thinner," and were "speculative and conclusory." 1-ER-17.

The District Court also ruled that the Employees' federal constitutional claims all failed on the merits. The free exercise claim failed because the Employees had "not plausibly alleged that the vaccination mandate was not neutral and generally applicable." 1-ER-18. Rejecting the Employees' argument that the Officials "gave themselves . . . standardless discretion" to make accommodation decisions, the District Court explained that the accommodation decisions were "based on existing federal and state law" as proscribed in the Proclamation. 1-ER-19. The District Court then distinguished the law applicable to

medical and religious exemptions, concluding that "granting medical exemptions, even at a higher rate than religious exemptions as [the Employees] allege . . . does not undermine DCYF's interests, nor does it raise 'a serious question as to whether the mandate is generally applicable.'" 1-ER-20 (citing *Doe v. San Diego Unified Sch. Dist.* (*SDUSD*), 19 F.4th 1173, 1178 (9th Cir. 2021)). Finally, addressing the Employees' argument that Secretary Hunter's emails indicated that the Officials "more easily accommodated individuals with medical exemptions," the District Court concluded that the "emails do nothing more than reflect the unremarkable reality that some employees would meet the requirements for medical or religious accommodation, and some would not." 1-ER-21.

The District Court ruled that the Employees' equal protection claim was based on the "same argument" that supported their free exercise claim and, thus, this claim was "subsumed by, and co-extensive with, [their] First Amendment claim." 1-ER-22 (citing *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001)) (alteration in original). As such, the free exercise claim was dismissed for the "same reasons" that the free exercise claim failed. 1-ER-22.

The District Court dismissed the Employees' procedural due process claim—which was based on the contention that they were denied "pre-termination hearings"—because they alleged no facts indicating that the Officials "participated in even one of the [Employees']

20

accommodation decisions, or that they were responsible for a specific decision not to allow pre-termination hearings." 1-ER-22–23. Further, the District Court concluded that the procedural due process claim failed on the merits because the Employees admitted that they "received notice of the vaccination mandate and applied for a religious exemption," which was "as much notice and process as the law required." 1-ER-23–24 (citing *Gray II*, 2024 WL 5001484, at \*1).

The District Court then explained that the Employees improperly raised a substantive due process claim based on the right to bodily autonomy "for the first time in their opposition brief" and that they had not provided Appellees with "fair notice" of the claim. 1-ER-24. Even so, the District Court held, the claim failed on the merits because "the Supreme Court has held that the right to refuse vaccines is not a fundamental right." 1-ER-25 (citing, inter alia, *Jacobson v. Massachusetts*, 197 U.S. 11, 12–13 (1905)).

As to the Contracts Clause claim, the District Court first noted that the Employees did not "dispute or otherwise make a Contracts Clause argument in their opposition brief," and, thus, they had abandoned the claim. 1-ER-26. Even so, the Employees did not "address[] any of [the] elements" of this claim in the FAC and, therefore, "fail[ed] to plausibly state a claim under the Contracts Clause." 1-ER-27. Having dismissed the § 1983 damages claims against the Officials in their individual capacity for the "lack of an underlying constitutional violation," the

21

District Court did not reach the Appellees' qualified immunity arguments. 1-ER-27.

The District Court dismissed the Employees' § 1983 claims for reinstatement against the Individual Defendants in their official capacity because "the claim for reinstatement does not remedy any ongoing violation of [the Employees'] constitutional rights" where they failed to "plead any plausible constitutional violation," and "did not address how their alleged constitutional violations are ongoing." 1-ER-28. Where there was "no dispute that the Proclamation [had] been rescinded and any [DCYF] policy dependent on it [was] thus no longer in effect," there was no ongoing violation or threat of future enforcement to enjoin. 1-ER-28 (citing *Taylor v. Washington Dep't of Corr.,* No. C23-6186-MLP, 2024 WL 2209684, *4 (W.D. Wash. May 16, 2024)).

Having dismissed all federal claims with prejudice, the District Court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. 1-ER-28.

Finally, the District Court declined to grant the Employees leave to amend their complaint a second time, concluding that the Employees already had "an opportunity to cure the alleged defects" in their original complaint but had failed to do so. 1-ER-29. Further, amendment would be futile where the District Court could not "conceive of facts that would render [Employees'] claims viable." 1-ER-29 (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)) (citation modified).

22

The Employees filed a motion for reconsideration, 2-ER-31, which the District Court denied because the motion "simply rehash[ed] the same arguments presented in their response to [the] motion to dismiss," and made no "showing of manifest error, newly discovered evidence, or intervening change in controlling law." 1-ER-3–4 (citing *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)).

The Employees appealed. *See* 7-ER-1636. Their Opening Brief challenges dismissal of only the free exercise, equal protection, and procedural due process claims. The Opening Brief also appears to improperly attempt to add an Establishment Clause claim that the Employees neither pleaded nor otherwise raised below. *See* Op. Br. at 7. The Opening Brief does not address the Employees' Contracts Clause claim, their substantive due process claim, their claim for injunctive relief, or any of the other claims in their original complaint that the District Court dismissed with prejudice in adjudicating the first motion to dismiss.

## STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss and "may affirm on any ground supported by the record." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1014 (9th Cir. 2023). A "motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is analyzed using the plausibility pleading standards of Rule 8(a), *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1056–57 (9th Cir. 2023). Under *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In general, denial of leave to amend is reviewed for abuse of discretion. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016). In assessing whether to grant leave, courts consider "five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the Appellant has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The "question of futility of amendment" is reviewed de novo, *United Healthcare*, 848 F.3d at 1172, and "[f]utility alone can justify the denial of a motion for leave to amend," *Nunes*, 375 F.3d at 808.

## SUMMARY OF ARGUMENT

This Court should affirm dismissal of the Employees' claims with prejudice. As an initial matter, the Employees' Opening Brief fails to substantively address dismissal of their claim for prospective injunctive relief against the Officials in their official capacities, their Contracts Clause claim, their substantive due process claim, or any of the claims in their original complaint that were dismissed with prejudice. They have thus abandoned those claims. The only remaining claims are the

24

Employees' free exercise, procedural due process, and equal protection claims against the Officials in their personal capacities.

The District Court correctly dismissed those three claims because the FAC fails to allege facts establishing that any Official personally participated in any supposed constitutional violation. The Employees' allegations of animus are unsupported, conclusory, and insufficient to give rise to a constitutional violation.

This Court may also affirm on the additional ground that the Employees failed to allege facts to support a plausible inference that any of their free exercise, due process, or equal protection rights were violated. Thus, the Employees *a fortiori* failed to allege a violation of any *clearly established* right, as needed to overcome qualified immunity, which provides another independent ground on which to affirm.

Finally, the District Court correctly denied leave to amend the complaint on the basis that further amendment would be futile. For all of these reasons, this Court should affirm the District Court's ruling.

## ARGUMENT

**I.** **The Employees Have Abandoned Their Contracts Clause, Substantive Due Process, and Injunctive Relief Claims**

The Employees have abandoned their Contracts Clause claim, substantive due process claim, and their request for injunctive relief against the Officials in their official capacities, by failing to substantively address these claims in their Opening Brief. *See Pinson v. Ivey*,

801 F. App'x 591, 592 (9th Cir. 2020) ("We do not consider matters not specifically and distinctly raised and argued in the opening brief.").

The District Court dismissed the Contracts Clause claim with prejudice because the Employees abandoned it by not making any argument in their opposition brief and because they otherwise did not plead the elements of the claim. 1-ER-26. The Employees do not address the Contracts Clause claim at all in their Opening Brief.

The District Court dismissed the substantive due process claim with prejudice because the Employees did not provide "fair notice" of the claim in the FAC and failed to allege any facts supporting the claim. 1-ER-24–25. And the District Court dismissed the Employees' claim for injunctive relief with prejudice because the Employees "have not plead any plausible constitutional violation" and "do not address how their alleged constitutional violations are ongoing." 1-ER-28.

In their Opening Brief, the Employees fail to substantively address these claims. They simply reference these claims in their "Statement of Issues," Op. Br at 8, and otherwise address the claims in one sentence. They assert that "there is no qualified immunity for suits against [the Officials] in their official capacities seeking prospective injunctive relief of reinstatement," *id.* at 61, and that they could add facts to support the substantive due process claim if given another opportunity to amend, *id.* at 59. The Employees do not otherwise address these claims, making no argument supporting the viability of either claim. Thus, the Employees

26

have abandoned both claims. *United States v. Kimble,* 107 F.3d 712, 715–16 n.2 (9th Cir. 1997) (An "argument not coherently developed in . . . briefs on appeal" is deemed "abandoned.").

Even if the Employees had not abandoned these claims, they would fail. The substantive due process claim fails because the Employees abandoned the claim in the District Court, have not alleged personal participation by any Official in a substantive due process violation, and courts have uniformly held that there is no fundamental right to refuse vaccination—including, specifically, the COVID-19 vaccine. *See, e.g.*, *Jacobsen*, 197 U.S. at 39 (upholding a criminal conviction for refusing a vaccine); *Carvalho*, 148 F.4th at 1031 (affirming dismissal of substantive due process challenge to COVID-19 vaccination policy because, "under *Jacobson*, we must apply rational basis review" and the "Policy easily survives such review because . . . it was more than reasonable . . . to conclude that COVID-19 vaccines would protect the health and safety of [school district's] employees and students"); *Child.'s Health Def., Inc. v. Rutgers, State Univ. of N.J.*, 93 F.4th 66, 78 (3d Cir. 2024) ("As federal courts have uniformly held, there is no fundamental right to refuse vaccination.") (collecting cases); *Klaasen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Given *Jacobsen*, . . . there can't be a constitutional problem with vaccination against [COVID-19].").

As to the claim for injunctive relief, the district court correctly ruled that the Employees make no factual allegations of an "ongoing violation

27

of federal law," as required to sue state officials for prospective injunctive relief under the *Ex Parte Young* doctrine, because the Proclamation and DCYF's vaccination requirement have been rescinded. 1-ER-28 (quoting *Cornel*, 37 F.4th at 531). The Employees have not alleged facts suggesting either policy will likely be reinstated. Thus, "[t]here is no allegation that the [Officials] are likely to [repeat the alleged action] in the future or that [the Employees] otherwise face a threat of harm from the state defendants' future actions." *Han v. U.S. Dep't of Justice*, 45 F.3d 333, 338 (9th Cir. 1995).

## II. The District Court Correctly Dismissed the Employees' § 1983 Claims for Lack of Personal Participation

The District Court correctly determined that the Employees failed to plead personal participation by the Officials in any constitutional violation. 1-ER-14; 1-ER-22–23. To state a claim for relief under § 1983, a plaintiff must allege both that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).

Critically, the second prong requires "a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930,

28

934 (9th Cir. 2002). Thus, "to establish individual liability under 42 U.S.C. § 1983, 'a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.'" *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis added and citation omitted); *see also Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 781 (9th Cir. 1997). Under this standard, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (citation modified). Rather, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633.

None of the Employees' allegations come close to meeting this standard. As to Secretary Hunter, the most they have alleged is that he communicated the Proclamation's requirements and the process DCYF would follow to assess exemption and accommodation requests. *See* 7-ER-1605. For example, the Employees allege that Secretary Hunter stated in a text message that "he did not [yet] know" how DCYF would respond to religious exemption requests, but that it would be "as strict as we are allowed to be." 7-ER-1605. That text message does not remotely implicate Secretary Hunter in a constitutional violation of any kind. As the District Court rightly noted, "[t]he only reasonable inference from Hunter's

29

statement is that he intended for DCYF to *follow* its statutory obligations on religious accommodations—not design a policy that substantially burdened religious belief." 1-ER-16 (citing *Iqbal*, 556 U.S. at 676 ("Where the claim is invidious discrimination in contravention of the First . . . Amendment[ ], our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.")).

Similarly, the Employees point to an email Secretary Hunter sent, which they claim "singled out religious objectors." Op. Br. at 26. Again, the email does no such thing. In it, Secretary Hunter outlined a "multi-prong approach" to promoting DCYF's compliance with the Proclamation, which referenced the requirement to "[g]et vaccinated or lose your job." 7-ER-1605. The email referred to "religious objections . . . real or imagined" and to sending a "strong message about the inability to hide behind the exemption strategy." 7-ER-1605.

These statements in no way demonstrate the requisite animus necessary to show personal participation in a constitutional violation. *See, e.g.*, *Iqbal*, 556 U.S. at 682 (allegations of "purposeful, invidious discrimination" were "not a plausible conclusion" given the "'obvious alternative [nondiscriminatory] explanation' for the arrests") (quoting *Twombly*, 550 U.S. at 567). As the District Court noted, the email "merely reiterates the State's goal of persuading employees to be vaccinated" and summarizes the Proclamation's requirements that all state employees must do so unless they receive a medical or religious exemption, the latter

of which are "limit[ed] . . . to those with sincerely held religious beliefs." 1-ER-16. And there is nothing discriminatory about limiting religious exemptions to employees whose vaccine objections are based on a "truly religious principle," as opposed to a "secular preference" couched in religious vocabulary. *Detwiler v. Mid-Columbia Med. Ctr.*, --- F.4th ----, No. 23-3710, 2025 WL 2700000, at *6, *8 (9th Cir. Sept. 23, 2025) ("[P]laintiffs cannot 'couch' their personal, secular beliefs in religious terms to claim Title VII protections.") (collecting cases).

The Employees also baselessly allege that Secretary Hunter's email "targeted Christians, in particular Catholics, because [it] suggested . . . resources to use in the multiprong approach," one of which was a video "that specifically identified in parenthesis [sic] 'pope, etc.'"[16] 7-ER-1605. But vaguely alleging that the email referred to a resource referencing Pope Francis does not come close to alleging an intent to target Catholics. *See, e.g.*, *Kane v. De Blasio*, 19 F.4th 152, 165 (2d Cir. 2021) (per curiam) (affirming dismissal of free exercise claim arising from COVID-19 vaccination mandate where mayor's "statement suggesting that religious adherents should be vaccinated because the Pope supports vaccination and that accommodations to the Mandate will only be afforded to religions with long-standing objections to vaccination" "reflect[ed]

---

[16] Notably, the FAC does not include any allegations as to any Employees' religious beliefs, Catholic or otherwise, or identify any religious practices to which any of them adhere.

31

nothing more than the Mayor's personal belief that religious accommodations will be rare, as well as 'general support for religious principles that [he] believes guide community members to care for one another by receiving the COVID-19 vaccine'") (quoting *Hochul*, 17 F.4th at 283). And, again, the Employees fail to explain how Secretary Hunter's email injured them or violated their civil rights.

The Employees' further allegation that Secretary Hunter sent an email stating that "some employees will be unable (medically) to take" the COVID-19 vaccine and asking, "[h]ow will we approve this?" does not show personal participation in any plausible violation of any of the rights the Employees assert. 7-ER-1606. Secretary Hunter's interest in approving legitimate medical exemptions in no way suggests an opposition to approving exemptions based on sincerely held religious belief. In fact, the Employees allege that each of them was *granted* an exemption based on their religious beliefs. 7-ER-1608.

The Employees' allegations regarding Rodriguez and Ybarra are even more sparse. Indeed, the FAC's only specific allegation involving them is that they received the email just discussed from Secretary Hunter. 1-ER-1605. The Employees try to argue that Rodriguez and Ybarra's receipt of this email somehow shows that they "worked together with Secretary Hunter to design and concoct" DCYF's exemption and accommodation process. *See* Op. Br. at 30. But such "[v]ague and conclusory allegations of official participation" are "not sufficient to

withstand a motion to dismiss." *Litmon*, 768 F.3d at 1241. These vague assertions, which lump Rodriguez and Ybarra together, fail to identify what specific action either Official took, much less how any action violated any Employees' constitutional rights.

The Opening Brief fails to cite a single case addressing personal participation and fails to cite any specific allegations in the FAC to support personal participation. *See* Op. Br. 25–32. Instead, the Employees misrepresent the FAC, claiming that Secretary Hunter's email "targeted Christians . . . who sincerely held religious beliefs opposing vaccine injection because each vaccine was developed and tested using aborted fetal cells." Op. Br at 27. But not a single allegation in the FAC references any Employee's objections to the vaccines based on their development or testing with fetal stem cells nor otherwise connects that stem cell issue to any Employee's religious beliefs. Nor is there any allegation that any Official ever mentioned fetal stem cells. (And, once again, the Employees allege that DCYF *approved* each of their religious exemption. 7-ER-1608.) The Court should disregard Employees' attempts to obfuscate the facts alleged in their own complaint—including the documents it attached and incorporated—and affirm the District Court's dismissal for failure to allege personal participation.

33

III.   **The Employees' Claims Also Fail on the Merits and Are Barred by Qualified Immunity**

Even if the FAC adequately alleged personal participation (it does not), it fails to state a claim for relief against any of the Officials and falls well short of clearing the even higher hurdle of qualified immunity. Although the District Court did not reach the Officials' qualified immunity defense, this Court may affirm on this alternate ground. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015) (explaining that affirmance is proper "on any ground raised below and fairly supported by the record") (citation omitted).

A. **The Free Exercise Claim Fails as a Matter of Law and Is Barred by Qualified Immunity**

1. **DCYF's implementation of the Proclamation was neutral, generally applicable, and satisfies rational basis review**

The gist of the Employees' free exercise theory is that they were constitutionally entitled to a religious accommodation that would have allowed them to continue working unvaccinated. The obvious obstacle to this theory is that, under the overwhelming caselaw, the Free Exercise Clause does not entitle *anyone* to a religious exemption from generally applicable vaccination requirements. This principle has been firmly established in federal free exercise jurisprudence for more than seventy-five years. *See Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) (holding that parents "cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds" because the

34

"right to practice religion freely does not include liberty to expose the community . . . to communicable disease").

Modern free exercise jurisprudence continues to support that principle. Under the U.S. Supreme Court's leading cases, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice," but must only satisfy rational basis review. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* (*Lukumi*), 508 U.S. 520, 531 (1993) (citing *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872 (1990)). Under the "*Smith* rule" (and well before the COVID-19 pandemic), numerous courts have upheld government vaccination requirements as neutral, generally applicable, and constitutional under rational basis review—even if they allowed *no religious exemptions*.[17] *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (holding that Free Exercise Clause does not require exemption from vaccination requirement) (citing *Jacobson*, 197 U.S. at 38); *Phillips v. City of N.Y.*, 775 F.3d 538, 543 (2d Cir. 2015) (same); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 354–55 (4th Cir. 2011) (same).

---

[17] Indeed, *Smith* itself suggested that "compulsory vaccination laws" were consistent with the First Amendment by listing them among an array of "civic obligations of almost every conceivable kind" whose constitutionality would be called into doubt in the absence of the rule articulated by the Court. 494 U.S. at 888–89.

Consistent with that established rule, in the COVID-19 context, countless federal courts—including this Court—have rejected challenges to vaccination requirements, both facially and as applied to particular employees. *See, e.g.*, *Pilz II*, 2023 WL 8866565, at \*2 (affirming dismissal of facial free exercise challenge to Proclamation after holding that Proclamation was neutral, generally applicable, and "rationally related to" the "compelling interest" of "stemming the spread of COVID-19") (citation modified); *Kane v. DeBlasio*, 19 F.4th 152, 175 (2d Cir. 2021) (rejecting free exercise challenge to COVID-19 vaccination requirement because, "[u]nder the Supreme Court's decision in *Smith*, the First Amendment likely does not require any religious accommodations whatsoever to neutral and generally applicable laws"); *Hochul*, 17 F.4th at 290 (holding that vaccine mandate without a religious exemption "was a reasonable exercise of the State's power to enact rules to protect the public health"); *Mills*, 16 F.4th at 30–32, 34 (rejecting free exercise challenge to Maine vaccination requirement "providing medical but not religious or philosophical exemptions").

This Court first joined this consensus in *SDUSD*, 19 F.4th at 1177. There, a high school student challenged on free exercise grounds a school district's COVID-19 vaccination requirement that provided for medical exemptions but not religious exemptions. *Id*. This Court held that the students had not raised a "serious question" as to the vaccination requirement's neutrality and general applicability, even without the

36

option of a religious exemption. *Id.* The district court was therefore correct in applying rational basis review and rejecting the requested preliminary injunction. *Id.* at 1177–81. Under the *Smith* rule—and as specifically applied in *SDUSD*—a vaccination requirement is perfectly consistent with the Free Exercise Clause, even when it allows *no* religious exemptions. The Employees thus cannot show that they have any clearly established free exercise right to a religious exemption and accommodation.

To be sure, because the Proclamation required state agencies to accommodate employees with bona fide religious beliefs against COVID-19 vaccination if they could do so without experiencing undue hardship, DCYF was constitutionally required to administer accommodations in a religiously non-discriminatory manner. *See Harris v. Univ. of Mass., Lowell*, 557 F. Supp. 3d 304, 314 (D. Mass. 2021) ("Certainly, once the university offers religious exemptions, it must not administer them in an unconstitutional way."). But the Employees have not "alleged anything to suggest that [the Officials] have administered their religious exemption policy in a way that burdens some religions but not others," or which would otherwise subject the Officials' actions to strict scrutiny. *Id.* at 315; *see supra* at 31–32.[18]

---

[18] The Employees' reliance on *Rodriguez v. Santa Clara Valley Transportation Authority*, No. 23-CV-01379-HSG, 2024 WL 4778049, at *5 (N.D. Cal. Nov. 12, 2024), is misplaced. The employer there rejected

Instead, the Employees make four arguments for application of strict scrutiny: (1) DCYF was "less likely" to grant religious exemptions than medical exemptions, Op. Br. at 41; (2) DCYF's accommodation decisions were allegedly motivated by anti-religious animus; (3) DCYF's implementation of the Proclamation's medical and religious accommodation requirements allowed decisionmakers to approve "ad hoc" exemptions, Op. Br. at 44–45; and (4) the Employees' allegedly could have been reasonably accommodated by wearing masks, with "frequent COVID-19 testing," or "social distancing." Each of the Employees' arguments for application of strict scrutiny defies the governing law.

## 2. Medical and religious accommodations are not comparable for free exercise purposes

First, the Employees argue that DCYF's "Multiprong Approach"—which they never actually describe—was "rapaciously skewed" to approve religious accommodations at a lower rate than medical accommodations. Op. Br. at 41 (alleging that DCYF was "50% less likely" to grant religious exemptions as medical exemptions). The Employees insist that this disparity undercuts the vaccination requirement's general applicability.

They are mistaken, as this Court has rejected similar arguments, which rely on a false equivalency between medical and religious

_____

some religious beliefs while favoring others. *Id*. The Employees make no such allegations here.

exemptions. As explained in *SDUSD*, a medical exemption "serves the primary interest for imposing the [vaccination] mandate—protecting student 'health and safety'—and so does not undermine the [government's] interests as a religious exemption would." 19 F.4th at 1178 (citing *Fulton v. City of Phila.*, 593 U.S. 522, 534 (2021) ("A law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that *undermines the government's asserted interests in a similar way*.") (emphasis added)); *see also Doe v. San Diego Unified Sch. Dist.*, 22 F.4th 1099, 1113 (9th Cir. 2022) (Berzon and Bennett, JJ., concurring in denial of reconsideration en banc) ("[T]he record demonstrates that [the school district]'s core interest in promulgating the student vaccination mandate was to promote 'the health and safety of [its] students' overall, including through medical exemptions. The mandate is consistent with that interest, as it requires vaccination in all cases in which vaccination will not harm the health and safety of a specific student.") (alteration in original).

Other circuits have reached the same conclusion. *See, e.g.*, *Spivack v. City of Phila.*, 109 F.4th 158, 176 (3d Cir. 2024) ("We join several of our sister circuits in recognizing this common-sense distinction" between medical exemptions and religious exemptions because, "[u]nlike a religious exemption, a medical exemption furthers the [government's] interest in keeping its employees safe and healthy by allowing employees for whom the COVID-19 vaccine would cause death or illness to abstain

39

from vaccination.") (collecting cases); *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 155 (2d Cir. 2023) (concluding repeal of religious exemption from COVID-19 vaccination requirement for students did not render law not generally applicable because "religious and medical exemptions are not comparable in reference to the State's interest in the health and safety of Connecticut's children and the broader public"); *Mills*, 16 F.4th at 30–31 ("[E]xempting from vaccination only those whose health would be endangered by vaccination does not undermine Maine's asserted interests here . . . ."); *Hochul*, 17 F.4th at 285 ("[A]pplying the vaccination requirement to individuals with medical contraindications and precautions would not effectively advance" the State's interests "to prevent the spread of COVID-19" and "protect[] the health of healthcare employees to ensure they are able to continue working . . . .").

Moreover, unlike religious exemptions, "medical exemptions are likely to be 'limited in duration,'" as in the case of temporary illness, and are thus not "'comparable' to the religious exemption in terms of the 'risk' each exemption poses to the government's asserted interests." *SDUSD*, 19 F.4th at 1178; *Hochul*, 17 F.4th at 286 (explaining that "temporary" conditions "such as having a current moderate-to-severe acute illness" may give rise to a medical exemption whereas "a sincerely held religious belief that vaccination is inconsistent with one's religion is unlikely to change"). The Employees' naked assertion that "[t]here was no difference

40

in risk or benefit" between medical and religious exemptions, 7-ER-1610, lacks any factual foundation and is insufficient to survive a motion to dismiss.[19] *See Iqbal*, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.") (citation modified). Nor will it surmount the more formidable obstacle of qualified immunity where such a robust consensus of caselaw supports the opposite conclusion.

### 3. The Employees have failed to plausibly allege that the Officials were motivated by religious animus

Next, the Employees argue that the Officials "disdain[ed]" the Employees' religious beliefs and took "actions" that were "anathema of maintaining religious tolerance and neutrality." Op. at 43. The FAC's factual allegations do not match the Employees' histrionic rhetoric. The District Court correctly held that the Employees "do not plausibly allege that DCYF's vaccination mandate was implemented in a non-neutral manner." 1-ER-19.

---

[19] The Employees also seemingly argue that a state policy regarding eligibility for the General Government Transition Pool somehow demonstrated the Officials' preference for medical exemptions. *See* Op. Br. at 49–50. But there are no allegations that any Official was involved in the development or implementation of this policy. *See id.* And the Employees' argument that "DCYF's policy to create eligibility for this benefit" more favorably to those who receive medical exemptions is not supported by plausible allegations and, as the District Court held, DCYF is not a "person" subject to suit under § 1983. 2-ER-154. Thus, this argument does not support a free exercise claim against the Officials.

"Where the claim is invidious discrimination in contravention of the First . . . Amendment[]," the Supreme Court's "decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676 (citing, inter alia, *Lukumi*, 508 U.S. at 540–41 (opinion of Kennedy, J.)). Such "purposeful discrimination" requires that "a decisionmaker[] undertak[e] a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* at 676–77 (citation modified); *see, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 584 U.S. 617, 634 (2018) (finding free exercise violation in government's "clear and impermissible hostility toward the sincere religious beliefs that motivated [the plaintiff's] objection").

The facts alleged in the FAC do not plausibly support the inference that any Employee was separated because of their religion. Nor do they support the FAC's conclusory assertion that the Officials' harbored "animus" toward the Employees' unidentified religious beliefs. 7-ER-1625. Indeed, the Employees do not so much as allege that any of the Officials (or anyone else at DCYF) was ever informed of any Employee's particular religious beliefs. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) ("When intent is an element of a constitutional violation, however, the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff . . . ."); *Lubetsky v. Applied Card Sys.*,

42

*Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002) ("[A]n employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion.").

With respect to religious animus, the Employees make no factual allegations related to Rodriguez or Ybarra, relying only on Secretary Hunter's email and text message discussing implementation of the Proclamation. *See* Op. Br. at 41–42. But, as explained above, these communications come nowhere close to establishing animus. *See supra* at 30–31. Rather, they simply reflected the Proclamation, which required state employees to "[g]et vaccinated" or "lose" their employment (unless exempt), that state agencies were not "allowed to" retain unvaccinated workers unless federal or state law entitled them to an accommodation, and that *only* employees with sincerely held (i.e., "real") religious objections to vaccination were eligible for religious exemptions. 7-ER-1605; *see* 4-ER-731 (prohibiting covered employers "from providing accommodations . . . [t]hat they know are based on the personal preference of the individual and not on an inability to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance"). Merely summarizing the requirements of the Proclamation—which was itself constitutional—does not suggest religious animus. *See Pilz II*, 2023 WL 8866565, at *2 (rejecting free exercise challenge to Proclamation and holding it "neutral" and "generally applicable"); *Bacon II*, 2024 WL 3041850, at *1 (same).

43

As the District Court correctly held in dismissing the free exercise claim on the merits, "the statements made in Hunter's text message and email simply restate the Proclamation's requirements and discuss ways that DCYF could encourage its employees to choose vaccination and overcome hesitancy based on secular and religious concerns alike." 1-ER-18–19. Far from the "clear and impermissible hostility toward" religion in *Masterpiece Cakeshop*, 584 U.S. at 634, Secretary Hunter did "not 'disparage' religion by comparing it to 'defenses of slavery and the Holocaust,'" nor anything like it. 1-ER-19 (quoting *Masterpiece Cakeshop*, 584 U.S. at 635).

The Employees' reliance on *Bates v. Pakseresht*, 146 F.4th 772 (9th Cir. 2025), is inapposite. Op. Br. at 19. In *Bates*, the Court held that Oregon violated the plaintiff's First Amendment rights when it denied her adoption application "after [she], based on her sincerely held religious beliefs, objected to" Oregon's policy of requiring adoptive parents to use "adopted children's preferred pronouns" and, if applicable, to "tak[e] them to medical appointments for gender transition." *Bates*, 146 F.4th at 776. The Court concluded that Oregon burdened the plaintiff's exercise of her religion because she was "denied certification to be an adoptive parent after she voiced her religious objections to" Oregon's policy. *Id.* at 791. The policy was not neutral because it "specifically reference[d] religion as an oppositional viewpoint," Oregon denied the plaintiff's application "only after she voiced a religious objection, and after giving it

44

insufficient solicitude," and the policy would "overwhelmingly block those prospective parents who hold traditional religious views on sexuality and gender." *Id.* at 792–94. For these same reasons, the Court concluded "it nearly follows that the policy is not generally applicable," adding that the policy was also not generally applicable because it allowed for "ad hoc decision making" that was not "tied to particularized, objective criteria." *Id.* at 795, 797 (citation omitted).

*Bates* is far afield from this case. The Employees do not allege that DCYF denied them a right generally available to those who do not share their religious beliefs specifically *because* they voiced those beliefs. Indeed, the Employees have not alleged that they ever informed any DCYF official of their particular religious beliefs (nor even what those beliefs are). And the consensus among federal courts, including this Court, is that vaccination mandates like the one at issue here *are* neutral and generally applicable, even if they allow *no* religious exemptions. *See supra* at 39–41.

### 4. The Proclamation did not permit "ad hoc" exemptions by allowing religious and medical accommodations

Next, the Employees contend that, by requiring agencies to afford employees' religious and medical accommodations where required under federal employment discrimination statutes, the Proclamation "provid[ed] 'a mechanism for individualized exemptions,'" thereby undermining its general applicability. Op. Br. at 45 (citation omitted)

45

(quoting *Fulton*, 593 U.S. at 533). "This case is like *Bates*," the Employees insist, because the Proclamation "permitted substantial discretion in granting exemptions." Op. Br. at 49. Once again, the Employees are mistaken.

As an initial matter, the Employees' argument overlooks that DCYF *approved* each of their requests for *exemptions*. 7-ER-1608. DCYF denied their requests for *accommodations*—not because of any assessment of their asserted religious beliefs but because the agency "determined that performing the essential functions of [their] position[s] unvaccinated [would] pose[ ] a threat to the health or safety of others in the workplace. . . . includ[ing] children and families." *E.g.*, 5-ER-906; 5-ER-909. The Employees believe that this undue hardship assessment was too "strict" *across the board*, alleging that DCYF's accommodation standard was not "consistent with serving the State's proffered interest of stemming the spread of COVID-19." 7-ER-1608–09. But that is the opposite of "ad hoc" decisionmaking: The Employees accuse DCYF of reviewing *all* religious accommodation requests "as strict[ly] as possible," not of applying the standard in an arbitrary way. 7-ER-1613.

The only *differential* application of DCYF's supposedly too-"strict" accommodation standard the Employees allege is that "DCYF treated its religiously exempt employees differently and less favorabl[y] than its [medically] exempt employees when it made its accommodation decisions." 7-ER-1609. As explained above, however, medical exemptions

46

from vaccination mandates are not comparable to religious exemptions under binding free exercise precedents. *See supra* at 39–41.

In addition, the Employees' argument ignores the many cases holding that a vaccine mandate's allowance for medical or religious exemptions is not equivalent to the "open-ended exemptions that courts have held trigger strict scrutiny." *Spivack*, 109 F.4th at 171 (citing *Fulton*, 593 U.S. at 535); *see, e.g., Pilz II*, 2023 WL 8866565, at *2. Unlike *Fulton*, the Proclamation did not afford DCYF or its Officials open-ended "discretion to grant individualized exemptions." 593 U.S. at 544 (Barrett, J., concurring). The District Court correctly rejected this argument, too. *See* 1-ER-19 (holding that the Officials "did not exercise standardless discretion given that the accommodations decisions were based on existing federal and state law") (citing *Stormans, Inc. v. Weisman,* 794 F.3d 1064, 1082 (9th Cir. 2015) ("The mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability.")). Unlike the "ad hoc decision making" in *Bates*, 146 F.4th at 797, DCYF permitted accommodations from the vaccination mandate consistent with the well-defined criteria in federal and state anti-discrimination law, as the Proclamation required. *See* 7-ER-730. This did not undermine its general applicability.

47

### 5. The alleged availability of reasonable accommodations is irrelevant to the Free Exercise Clause

Failing to identify a viable free exercise theory, the FAC advances Title VII principles—even though they did not plead a Title VII claim—sounding in failure-to-accommodate law that have no bearing on the free exercise claim (or any other claim pleaded). For instance, the FAC identifies various accommodations the Employees suggest they should have been granted but were not. *See, e.g.*, 7-ER-1604 (alleging Employees "could have been accommodated" with "masking, testing, PPE, [and] remote work"). But those failure-to-accommodate-religion principles sound in *Title VII*, not the Free Exercise Clause, and are thus irrelevant to the Employees' claims. *See, e.g.*, *Shrum v. City of Coweta*, 449 F.3d 1132, 1143 (10th Cir. 2006) (McConnell, J.) ("[T]he mere failure of a government employer to accommodate the religious needs of an employee, where the need for accommodation arises from a conflict with a neutral and generally applicable employment requirement, does not violate the Free Exercise Clause, as that Clause was interpreted in *Smith*."); *Endres v. Indiana State Police*, 349 F.3d 922, 924 (7th Cir. 2003) (rejecting argument that employer's "decision not to accommodate [employee's] desire for different duties [consistent with his religious beliefs] violated the free exercise clause of the first amendment, as *Smith* understands that clause").

48

For all these reasons, this Court should affirm the District Court's conclusion that the Employees failed to allege a plausible violation of their free exercise rights by anyone.

### 6. Qualified immunity bars the free exercise claim

Even if the Employees had put forward a colorable free exercise theory (and they have not), the Court should affirm dismissal of the claim against the Officials based on their qualified immunity.[20] Although the District Court did not reach qualified immunity as to any claim, the Officials asserted this defense in the motion to dismiss and this Court may affirm on any basis raised below and supported by the record. *See Saloojas, Inc.*, 80 F.4th at 1014.

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages" if "their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To overcome an assertion of qualified immunity, a plaintiff must plead "facts showing

---

[20] The Employees oddly appear to contend that this Court cannot reach the qualified immunity argument because Appellees "never filed a notice of cross appeal challenging the district court's decision to not decide qualified immunity." Op. Br. at 62. But a cross-appeal would have been improper because the District Court *granted* Appellees' motion to dismiss in full. And this Court may affirm dismissal on any grounds, even those not reached by the district court. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) ("We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning.").

49

(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). Once a defendant raises this defense, "the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). "[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted); *see also District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.") (citation modified). Generally, for a federal constitutional question, only a U.S. Supreme Court or published Ninth Circuit decision can suffice to show a right is clearly established. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

As the above discussion shows, the Employees fail to demonstrate a violation of any clearly established right. *See, e.g., Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1123 (9th Cir. 2023) ("We begin our qualified immunity analysis . . . by considering whether there is a violation of clearly established law without determining whether a constitutional violation occurred.") (citation modified). To the contrary, the governing law all points in the opposite direction: the Free Exercise Clause did not entitle the Employees to a religious accommodation from

50

the neutral and generally applicable vaccination requirement. The Employees identify no case that would have put the Officials on notice that their straightforward implementation of the Proclamation could have possibly violated the Free Exercise Clause—let alone a decision of the Supreme Court or a published decision of this Court. The Employees have therefore failed to show that their clearly established free exercise rights were violated. Qualified immunity bars this claim.

## B. The Equal Protection Claim Fails as a Matter of Law and Is Barred by Qualified Immunity

### 1. The equal protection claim fails on the merits

The District Court correctly determined that the Employees' equal protection claim was based on "the same argument" that supports their free exercise claim and, thus, was "subsumed by, and co-extensive with" the free exercise claim. 1-ER-22 (citing *Orin*, 272 F.3d at 1213 n.3); *see also Mills*, 16 F.4th at 35 ("When a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review."). As such, the equal protection claim was properly dismissed for the same reasons supporting dismissal of the free exercise claim. 1-ER-22; *supra* at 34–51. In fact, the Employees admit that "[i]f the district court was correct that [they] did not allege facts sufficient to state a plausible claim for a Free Exercise deprivation, then they did not allege sufficient facts to state a claim for an Equal Protection violation." Op. Br. at 57.

To support their equal protection claim, the Employees simply re-state the argument they make in support of their free exercise claim: without citation to a single case, the Employees contend that DCYF's "approval rates were 50% greater for medical accommodations when compared to religious accommodations," and that this supports an equal protection claim. Op. Br at 58. However, as explained previously, this purported disparity is insufficient to support Employees' free exercise claim. *See supra* at 38–41. The same goes for their equal protection claim.

Even crediting the allegation that DCYF approved religious and medical accommodations at different rates, such disparities cannot support an equal protection claim. For one thing, the Employees, at best, allege a "disparate impact" on religious accommodation requests, "not disparate treatment, and the equal protection guarantee is concerned only with the latter." *Anderson v. Cornejo*, 355 F.3d 1021, 1024 (7th Cir. 2004) (citing *Washington v. Davis*, 426 U.S. 229 (1976)). Further, the Employees have failed to plausibly allege that those two groups are "similarly situated" as required to state an equal protection claim. *Olson v. California*, 104 F.4th 66, 77 (9th Cir. 2024) (en banc) ("To establish an Equal Protection claim, Plaintiffs must demonstrate 'that a class that is similarly situated has been treated disparately.'") (citation omitted).

As discussed previously, they are not. *See supra* at 38–41. Unlike religious exemptions, "medical exemptions are likely to be 'limited in duration'" and "serve[] the primary interest for imposing the mandate"—

protecting "health and safety." *SDUSD*, 19 F.4th at 1178 (citation omitted) (free exercise); *Mills*, 16 F.4th at 30–32, 35 (free exercise and equal protection); *Hochul*, 17 F.4th at 286 (free exercise); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike.").

### 2. The equal protection claim is barred by qualified immunity

Finally, even if the Employees could point to a violation of their equal protection rights, which they cannot, qualified immunity would bar their claim because no "robust consensus" of "persuasive authority" suggests any such violation was clearly established. *Wesby*, 583 U.S. at 63 ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.") (citation modified). To the contrary, courts analyzing equal protection challenges to vaccination requirements have overwhelmingly rejected them. *See, e.g., Conn. Off. of Early Childhood Dev.*, 76 F.4th at 157 (citing *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021)); *Kane*, 19 F.4th at 167, n.14; *Mills*, 16 F.4th at 35.[21] In fact, the Employees fail to cite to even a single case from

---

[21] *See also Carvalho*, 148 F.4th at 1033; *Wise*, 2021 WL 4951571, at *3; *Williams v. Brown*, 567 F. Supp. 3d 1213, 1227 (D. Or. 2021); *Kheriaty v. Regents of Univ. of Cal.*, No. SACV 21-01367 JVS (KESx), 2021 WL

any jurisdiction supporting their contention that the Officials violated any clearly established equal protection right. *See* Op. Br. at 57–58.

## IV. The Procedural Due Process Claim Fails as a Matter of Law and Is Barred by Qualified Immunity

### 1. The procedural due process claim fails on the merits

The Employees also fail to allege a violation of their procedural due process rights. Indeed, this Court's recent decisions squarely foreclose their claims.

The Employees' procedural due process claim rests on the allegation that they were not given "a pre-deprivation hearing where they [could] tell their side of the story and present rebuttal declarations or affidavits" pursuant to *Loudermill*. 7-ER-1621–22; *see* Op. Br. at 56–57. *Loudermill* provides that, before a government entity may discharge a "tenured public employee" for cause, it must provide "notice and an opportunity to respond." 470 U.S. at 546. The Employees' due process claim fails because they received all the process *Loudermill* requires and, in any event, *Loudermill* does not apply to generally applicable job requirements established by law, like the Proclamation.

First, even assuming *Loudermill* applies, the Employees received all it would require—"notice and an opportunity to respond." 470 U.S. at 546. Indeed, this Court in *Gray II* rejected nearly identical due process

4714664, at *7 (C.D. Cal. Sept. 29, 2021); *Halgren v. City of Naperville*, 577 F. Supp. 3d 700, 754 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022).

54

claims brought by former WSDOT employees who claimed to have received inadequate "notice and hearing procedures" prior to termination pursuant to the Proclamation. 2024 WL 5001484, at *1. The Court observed that the employees "received notice of the vaccination policy, the exemption and accommodation decision, and the potential for termination" and were given "'pretermination opportunit[ies] to respond' via written submissions and meetings." *Id.* (alteration in original) (quoting *Loudermill*, 470 U.S. at 542). Thus, "[e]ven if *Loudermill* could be read as clearly established law with respect to the accommodation process," and the Court was "doubtful that it can," the employees "received as much notice and process as the law required." *Id.* Similarly, in *Curtis v. Inslee*, 154 F.4th 678, 693 (9th Cir. 2025), this Court recently affirmed dismissal of a procedural due process claim where the plaintiffs were "provided notice of the vaccination requirements and of the consequence of termination for failure to comply" and were "given opportunities to be heard for the purpose of religious and medical exemptions."

The Employees argue that DCYF conducted "sham" pre-termination "meetings" that did not provide "a *meaningful* opportunity to be heard." Op. Br. at 54 (emphasis in original). But the Employees cite no such allegations in the FAC. *Id.* Even so, the plaintiffs in both *Bacon II* and *Gray II* made the same "sham-meeting" argument and, in each case, this Court rejected it. *See Bacon II*, 2024 WL 3041850, at *2 ("[T]he

55

firefighters' objections ultimately rested on the *substantive* rules applied in the termination process—namely, . . . what they considered to be an overly stringent, 'sham' approach to accommodations. . . . . The firefighters did not like the substance of the City's construction of the Proclamation in their individual cases, but that is not a procedural due process objection."); *Gray II*, 2024 WL 5001484, at \*2 (addressing asserted "right to be free from 'sham' or 'pretext[ual]' proceedings" and holding that "the contours of the claimed right in the accommodations context were . . . '[in]sufficiently definite'" to overcome qualified immunity) (alteration in original) (quoting *Martinez v. City of Clovis*, F.3d 1260, 1275 (9th Cir. 2019)).

The Employees here received the same notice and process as the employees in *Bacon II*, *Gray II*, and *Curtis*. Although they do not like the outcome, they admit that DCYF notified them of the vaccination requirement and provided a process to apply for exemptions and accommodations. 7-ER-1584–1604. Such notice and opportunity to respond is the most that *Loudermill* could have possibly required.

Second, *Loudermill* is inapplicable where, as here, employees are separated from public employment pursuant to a "generally applicable" job requirement established by law. *See, e.g.*, *United States v. Locke*, 471 U.S. 84, 108 (1985) ("In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the

56

statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements."); *Bacon II*, 2024 WL 3041850, at *2 ("[W]ith respect to a categorical challenge to the substance of a generally applicable law impacting property rights— such as 'continued employment in a state job'— . . . no procedural due process is required beyond the proper promulgation of the new substantive rule.") (citation omitted).

Applying that principle, the Sixth Circuit rejected a procedural due process claim by a former nurse after she was terminated pursuant to the federal COVID-19 vaccination requirement for healthcare staff at Medicare- and Medicaid-certified providers. *See Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *1 (6th Cir. Apr. 5, 2023) (citing 86 Fed. Reg. 61555 (Nov. 5, 2021)). The plaintiff invoked "*Loudermill* for the proposition that she was entitled to notice and a hearing before termination of her public sector job." *Id.* at *8. The Sixth Circuit disagreed because "[g]overnmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard." *Id.* at *7 (citation omitted). The hospital's "vaccination requirement was a prospective obligation that applied equally to all [hospital] employees," and the plaintiff "does not dispute that she violated the generally applicable vaccine mandate that led to the adverse employment

57

decision." *Id.* at \*7–8. The court, therefore, affirmed dismissal of her due process claim on the merits. *Id.* at \*9.

For these reasons, the District Court correctly held that the Employees' procedural due process claim failed as a matter of law.

## 2. The procedural due process claim is barred by qualified immunity

Alternatively, qualified immunity bars the Employees' due process claim for damages. The Employees' basic procedural due process theory—which criticizes DCYF for not providing individualized evidentiary hearings—does not even identify *arguable* due process violations, let alone clearly established ones. As the Ninth Circuit explained in *Gray II*, it is "doubtful" that "*Loudermill* could be read as clearly established law with respect to the accommodation process." 2024 WL 5001484, at \*1. Indeed, the weight of authority strongly suggests that generally applicable vaccine mandates imposed by state law provide all the process due to state employees. *See, e.g.*, *Curtis*, 154 F.4th at 692, 693 (employees received "all the process that was due" when they received "notice of the vaccination requirements and of the consequence of termination for failure to comply" and were "given opportunities to be heard for the purpose of religious and medical exemptions" and "assessments for qualification for such exemptions be 'individualized.'"); *Clark*, 2023 WL 2787325, at \*8 (*Loudermill* "is inapplicable" where plaintiff "violated [a]

58

generally applicable vaccine mandate that led to the adverse employment decision").

Even if the FAC plausibly alleged a due process claim (it does not), the Employees fail to overcome qualified immunity because they cannot show that any Official violated a clearly established due process right. *See Gray II*, 2024 WL 5001484, at \*2 (holding that "the officials are entitled to qualified immunity" from procedural due process claim "because the contours of the claimed right in the accommodations context were not clearly established or 'sufficiently definite' such that a reasonable person in the shoes of one of the officials would have understood that their actions violated that right") (quoting *Martinez*, 943 F.3d at 1275).

## IV. The District Court Correctly Held That Further Amendment of the Employees' Complaint Would Be Futile

The district court did not err in holding that leave to amend would be futile. *See* 1-ER-29. Having had ample opportunity to allege facts demonstrating personal participation by any Official in a constitutional violation, the Employees have given no indication they would be able to do so if given a third chance. *See Klein v. Scott*, 481 F. App'x 347, 348 (9th Cir. 2012) (holding that the district court properly denied leave to amend where it was "clear from the allegations in the complaint that amendment would be futile" based on supervisors' lack of personal participation).

59

The Employees argue they could "easily repair[]" a substantive due process claim by "adding an express reference to § 1983." Op. Br. at 59. But the District Court determined that the Employees *never pled* a substantive due process claim and, even if they had, the claim would fail on the merits because "the right to refuse vaccines is not a fundamental right." 1-ER-25. Adding a reference to § 1983 would not cure those fatal flaws. Additionally, the Employees do not otherwise address their substantive due process on appeal, thus abandoning the claim. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988).

The Employees also argue that they could "add[] allegations about Appellees' failure to provide any post-termination hearing" to save their procedural due process claim. Op. Br. at 59. But, as previously explained, the overwhelming caselaw establishes that the Employees received all process that was due when they were notified of the Proclamation's vaccination requirement and were given the opportunity to request exemptions. *See supra* at 54–58. Any additional facts about post-termination hearings would not change this analysis and the Employees do not cite a single case suggesting otherwise. *See* Op. Br. at 58–60.

Amendment would also be futile because qualified immunity bars the Employees' claims, as explained above. *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (affirming dismissal of § 1983 claim with prejudice where plaintiff failed to establish that defendant violated a clearly established right); *Thompson v. Rahr*, 885 F.3d 582, 590 (9th Cir.

2018) (same). The Employees were previously given the opportunity to amend their complaint to cure the deficiencies and failed to do so. The Employees provide no explanation for their failure to allege facts sufficient to support their claims and there is no indication that, given another opportunity, they could allege any facts that would defeat qualified immunity.

The District Court correctly concluded that "the 'underlying facts' do not 'provide proper grounds for relief,'" and it could not "'conceive of facts that would render' Plaintiffs' dismissed claims 'viable.'" 1-ER-29 (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988), and *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011)).

## CONCLUSION

For all of the foregoing reasons, this Court should affirm.

RESPECTFULLY SUBMITTED this 3rd day of November, 2025.

> *s/Zachary J. Pekelis*
> ZACHARY J. PEKELIS
> KAI A. SMITH
> ERICA CORAY
>   *Special Assistant Attorneys General*
> PACIFICA LAW GROUP LLP
> 401 Union Ave, Suite 1600
> Seattle, WA  98101-2668
> Telephone:  206-240-1700
> Facsimile:  206-240-1750
>
> *Counsel for Defendants-Appellees*

61

## CERTIFICATE OF SERVICE

I, Zachary J. Pekelis, hereby certify that I electronically filed the foregoing ANSWERING BRIEF OF DEFENDANTS-APPELLEES WASHINGTON DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system on November 3, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

PACIFICA LAW GROUP LLP


*s/Zachary J. Pekelis*
Zachary J. Pekelis, WSBA No. 44557
Kai A. Smith, WSBA No. 54749
Erica Coray, WSBA No. 61987
401 Union Ave, Suite 1600
Seattle, WA  98101-2668
Telephone:  206-240-1700
Facsimile:  206-240-1750

*Counsel for Defendants-Appellees*

62

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellees identify the following related cases:

- *Taylor, et al. v. Wash. Dep't of Corr., et al.*, No. 24-7120;
- *Colombo v. Wash. Dep't of Nat. Res., et al.*, No. 25-3863.

**Signature** <u>*s/Zachary J. Pekelis*</u>  **Date November 3, 2025**

63

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** ___**25-3282**_____

I am the attorney or self-represented party.

**This brief contains __13,882__ words,** including __0__words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

65

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** _s/Zachary J. Pekelis_  **Date**   **November 3, 2025**