NO. 25-3282

---

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

STEPHANIE SEAGRAVES, *et al.*,
*Plaintiffs-Appellants*,

v.

DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES, *et al.*,
*Defendants-Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

No. 3:24-cv-05081
The Honorable Tiffany M. Cartwright
United States District Judge

---

**APPELLANTS' REPLY BRIEF**

ARNOLD JACOBOWITZ & ALVARADO PLLC

NATHAN J. ARNOLD
WSBA No. 45356
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221
*Counsel for Appellants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ iv

I.  SUMMARY OF REPLY ARGUMENT ............................................. 1

II. ARGUMENT .................................................................... 2

   A.  The Court should Not Expand the Scope of Judicial Notice. ......... 2

   B.  Appellants Did not Abandon Their Due Process Claim or Their Request for Prospective Relief. ....................................................... 3

   C.  The District Court Erred in Concluding that Appellants Failed to Allege Personal Participation Under § 1983. ................................. 5

      1.  The FAC alleges policy-level causation by Secretary Hunter .. 6

      2.  The FAC plausibly alleges personal participation by Rodriguez and Ybarra ............................................................. 10

      3.  The District Court improperly construed facts against Appellants ................................................................. 11

      4.  Conclusion as to Personal Participation .............................. 11

   D.  The First Amended Complaint Plausibly Alleges Violations of the Free Exercise Clause. ................................................... 12

      1.  The FAC plausibly alleges lack of neutrality toward religion. 13

      2.  The FAC plausibly alleges lack of general applicability. ........ 14

      3.  The FAC alleges a substantial burden on religious exercise. . 16

      4.  Appellees' reliance on vaccine mandate cases is misplaced. . 16

      5.  Strict scrutiny cannot be resolved on the pleadings. ............... 17

6. Conclusion as to Free Exercise ................................................ 18

E. The First Amended Complaint Plausibly Alleges Violations of the Equal Protection Clause. ................................................ 18

    1. Religion is a suspect classification. ........................................ 18

    2. The FAC plausibly alleges differential treatment of similarly situated employees. ................................................ 19

    3. The FAC plausibly alleges discriminatory intent. .................. 20

    4. Equal Protection Claims are not Duplicative of Free Exercise Claims ................................................ 21

    5. Conclusion as to Equal Protection ......................................... 22

F. Qualified Immunity Does Not Bar Appellants' Claims. ............... 22

    1. At the pleading stage, the Court must accept the FAC's allegations as true. ................................................ 23

    2. The FAC alleges violations of clearly established constitutional rights. ................................................ 24

    3. Qualified Immunity Cannot be Resolved on this Record ....... 28

    4. Appellees' Qualified Immunity argument merely reargues the merits. ................................................ 29

    5. Conclusion as to Qualified Immunity .................................... 30

G. The District Court Erred in Denying Leave to Amend ................. 30

III. CONCLUSION ................................................................................ 33

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Ariz. Dream Act Coalition v. Brewer,*
  855 F.3d 957, 966–68 (9th Cir. 2017) ...................................................... 24

*Ashcroft v. al-Kidd*,
  563 U.S. 731, 735, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011)
  .................................................................................... 28, 32, 34, 37

*Bates v. Fariborz Pakseresht,*
  146 F.4th 772, 784 (9th Cir. 2025) ................................................... 15, 17

*Brown v. City of Oneonta,*
  221 F.3d 329, 337 (2d Cir. 1999) ............................................................ 16

*Catholic League for Religious & Civil Rights v. City & County of San Francisco*,
  624 F.3d 1043, 1050–51 (9th Cir. 2010) ................................................ 21

*Church of Lukumi Babalu Aye v. City of Hialeah*,
  508 U.S. 520, 531–32, 113 S. Ct. 2217, 124 L.Ed.2d 472 (1993)
  .................................................................................... 15, 20, 27, 33

*City of New Orleans v. Dukes,*
  427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976) ............ 23, 34

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532, 542–46 (1985)...................................................... 35, 36, 38

*Dubner v. City & Cnty. of San Francisco*,
  266 F.3d 959, 968 (9th Cir. 2001) ............................................................ 6

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048, 1052 (9th Cir. 2003) ......................................... 39, 40, 41

*Emp't Div. v. Smith*,
  494 U.S. 872, 901, 110 S. Ct. 1595, 108 L.Ed.2d 876 (1990) ............... 27

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Of Educ.*,
82 F.4th 664 (9th Cir. 2023) ................................................................ 17

*Foman v. Davis*,
371 U.S. 178, 182, 83 S. Ct. 227,  9 L. Ed. 2d 222 (1962) ..................... 38

*Fraternal Order of Police v. City of Newark*,
170 F.3d 359, 366 (3d Cir. 1999) .......................................................... 18

*Fulton v. City of Philadelphia*,
593 U.S. 522, 533–34 (2021)................................................. 16, 18, 31, 32

*Grabowski v. Ariz. Bd. of Regents*,
69 F.4th 1110, 1123 (2023) ................................................................... 31

*Grutter v. Bollinger*,
539 U.S. 306, 327, 123 S. Ct. 2325, 156 L.Ed.2d 304 (2003) ............... 22

*Hansen v. Black*,
885 F.2d 642, 646 (9th Cir. 1989) ........................................................... 7

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
707 F.3d 1114, 1123 (9th Cir. 2013) ........................................... 26, 32, 34

*Ho by Ho v. S.F. Unified Sch. Dist.*,
965 F. Supp. 1316, 1325 (N.D. Cal. 1997)............................................. 21

*Hope v. Pelzer*,
536 U.S. 730, 739, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002)
.................................................................................... 30, 34, 35, 38

*Hydrick v. Hunter*,
669 F.3d 937, 942 (9th Cir. 2012) ......................................................... 12

*Johnson v. Wal-Mart Stores, Inc.*,
544 F. App'x 696, 697 (9th Cir. 2013)................................................... 10

*Karim-Panahi v. Los Angeles Police Dep't*,
839 F.2d 621, 623 (9th Cir. 1988). ....................................................... 41

v

*Keates v. Koile*,
   883 F.3d 1228, 1234–35 (9th Cir. 2018) ................... 28, 29, 30, 36, 37, 38

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507, 525-27, 142 S. Ct. 2407, 213 L.Ed.2d 755(2022) ............ 19

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988, 998 (9th Cir. 2018) ........................................................ 3

*Lee v. City of Los Angeles*,
   250 F.3d 668, 690 (9th Cir. 2001) .................................................... 3, 24

*Lopez v. Smith*,
   203 F.3d 1122, 1127 (9th Cir. 2000) ......................................... 39, 40, 41

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
   584 U.S. 617, 638–40, 138 S. Ct. 1719, 201 L. Ed. 2d 35  (2018) ......... 33

*Matthews v. Harney Cnty.*,
   819 F.2d 889, 891–92 (9th Cir. 1987) ..................................................... 35

*Morley v. Walker*,
   175 F.3d 756, 761 (9th Cir. 1999) ........................................................ 36

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   779 F.3d 1036, 1065 (9th Cir. 2015) ...................................................... 11

*OSU Student Alliance v. Ray*,
   699 F.3d 1053 (9th Cir. 2012) .............................................................. 13

*Owen v. Independence*,
   445 U.S. 622, 651-52, 100 S. Ct. 1398, 63 L.Ed.2d 673 (1980) .............. 8

*Pearson v. Callahan*,
   555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) ...... 28, 30, 38

*Redman v. Cnty. of San Diego*,
   942 F.2d 1435, 1447 (9th Cir. 1991) .................................................... 6, 7

*Saud v. Days*,
   36 F.4th 949, 953 (9th Cir. 2022) ......................................................... 23

*Solid Host, NL v. Namecheap, Inc.*,
   652 F. Supp. 2d 1092, 1119 (C.D. Cal 2009) ............................................ 11

*Starr v. Baca*,
   652 F.3d 1202, 1207–08 (9th Cir. 2011) ............................ 6, 8, 10, 13, 29

*Stormans, Inc. v. Wiesman*,
   794 F.3d 1064, 1081 (9th Cir. 2015) ..................................................... 21

*Tandon v. Newsom*,
   593 U.S. 61, 62, 141 S. Ct. 1294, 209 L.Ed.2d 355 (2021) .. 17, 18, 31, 32

*Taylor v. List*,
   880 F.2d 1040, 1045 (9th Cir. 1989) ..................................................... 11

*United States v. Armstrong*,
   48 F.3d 1508, 1513 (9th Cir. 1995) ....................................................... 25

*United States v. Ritchie*,
   342 F.3d 903, 908–09 (9th Cir. 2003) ..................................................... 2

Village of Arlington Heights v. Metro. Hous. Dev. Corp.,
   429 U.S. 252, 266–68, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977) .......... 25, 32

*Washington v. Trump,*
   847 F.3d 1151, 1167 (9th Cir. 2017) ..................................................... 27

*Washington v. United States Dep't of Homeland Sec.*,
   598 F. Supp. 3d 1051, 1071 (E.D. Wash. 2021) .................................... 25

*Watkins v. City of Oakland*,
   145 F.3d 1087, 1093 (9th Cir. 1998) ................................................... 6, 8

## Statutes

42 U.S.C. § 1983 ................................................................ 2, 4, 5, 6, 12, 25

## Rules

Rule 12(b)(6) ...................................................................... 2, 9, 11, 12, 23

Rule 201 .................................................................................................. 3

**<u>Constitutions</u>**

U.S. Const. amend. XIV ................................................................. 4

## I.  SUMMARY OF REPLY ARGUMENT

As a threshold matter, Appellants respectfully request that this Court disregard, and where appropriate strike, portions of Appellees' Statement of the Case that rely on matters outside the record or on disputed propositions not properly subject to judicial notice.

As to the merits of Appellees' Answer Brief, Appellees attempt to reframe this appeal as a broad challenge to Washington's COVID-19 vaccination mandate. That framing is inaccurate. Appellants do not challenge the facial validity of the Governor's Proclamation. Rather, they challenge DCYF's discriminatory and procedurally deficient implementation of that Proclamation, which treated religious objectors worse than similarly situated secular objectors and resulted in termination of protected public employment without constitutionally required process. The constitutional questions presented turn on DCYF's policy choices and conduct, not on extra-record factual narratives drawn from other litigation. When accurately framed, Appellees' threshold arguments fail.

Appellees also seek affirmance by invoking a flurry of threshold defenses that do not withstand scrutiny. They argue that Appellants abandoned claims by narrowing their appeal, that the FAC failed to allege personal participation by individual officials, that certain arguments were waived, and that qualified

1

immunity bars relief in any event. Each contention misstates either the record or controlling law. Appellants preserved and fully briefed their core constitutional claims; § 1983 does not require hands-on participation where officials design and enforce policies that foreseeably cause constitutional injury; waiver is not lightly inferred where claims were raised and adjudicated below; and qualified immunity does not shield officials from liability for violations of clearly established Free Exercise, Equal Protection, and Procedural Due Process principles. This Court should reject these technical threshold arguments and remand to allow this action to reach the merits.

## II.    ARGUMENT

### A.    The Court should Not Expand the Scope of Judicial Notice.

Appellate review—particularly on review of a Rule 12(b)(6) dismissal—is confined to the allegations of the operative complaint and to matters properly noticed below. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). Appellees repeatedly exceed those limits in five distinct ways: (1) treating factual characterizations from other judicial decisions as adjudicative facts, though courts may notice only the existence of opinions, not the truth of their factual findings, *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); (2) presenting contested historical propositions—such as claims about the specific severity of COVID-19—as undisputed facts not subject to reasonable dispute

under Rule 201; (3) asserting disputed scientific and medical propositions as settled facts notwithstanding contrary allegations in the FAC; (4) repackaging disputed factual assertions as "background" to justify misconduct; and (5) relying on agency statements as conclusive facts rather than noticing only their existence. "[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Because Appellees' narrative of the case, where it differs from Appellants', depends on disputed extra-record "facts," it should play no role in this Court's analysis, which should rely on the FAC and properly noticed materials alone.

**B.     Appellants Did not Abandon Their Due Process Claim or Their Request for Prospective Relief.**

Appellees begin by asserting that Appellants have "abandoned" certain claims by focusing their appellate briefing on Free Exercise, Equal Protection, and Procedural Due Process.  Appellees mischaracterize Appellants' Opening Brief.

3

According to Appellees, Appellants failed to sufficiently address their substantive due process claim or their claim for prospective injunctive relief (reinstatement). Ans. Br. at 25–26. But Appellees concede, *id.*, that Appellants argued they had the right to amend their pleading on substantive due process. See Opening Br. at 59. Specifically, Appellants could amend and satisfy the District Court's issue by simply adding express citations to § 1983 and the Fourteenth Amendment. *Id.* What more need be said on that simple point? And Appellees concede, Ans. Br. at 26, that Appellants argued that qualified immunity does not bar their reinstatement claim—indeed, Appellants cited governing authority that qualified immunity cannot bar a claim against officers in their official capacity. Opening Br. at 61. That fully deals with the issue, especially since the District Court did not even address it and Appellants were merely trying to anticipate Appellees' argument here. *Id.* Far from abandoning these claims, Appellants addressed them as fully as reasonably possible, and certainly enough to preserve them in this appeal.

In any event, Appellees' abandonment argument is academic. Even if other theories were deemed abandoned, that would not justify dismissal with prejudice of the remaining constitutional claims or denial of leave to amend. The dispositive questions remain whether the FAC plausibly alleged constitutional violations and whether amendment could cure any pleading deficiencies. See 1-

ER-27–28 (dismissing certain claims without prejudice for pleading insufficiency rather than waiver).

**C.  The District Court Erred in Concluding that Appellants Failed to Allege Personal Participation Under § 1983.**

Appellees next argue—and the district court held—that Appellants failed to allege personal participation by the individual defendants. Ans. Br. at 28–33; 1-ER-19–21. Appellees misunderstand § 1983 causation principles and misread the FAC.

Section 1983 does not require plaintiffs to allege that each defendant personally executed every downstream act that resulted in constitutional injury. Rather, liability attaches where an official personally participated in the constitutional deprivation, including by designing, directing, or enforcing a policy that foreseeably caused the violation.

> "The requisite causal connection can be established . . . by setting in motion a series of acts by others," [*Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)] (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for

conduct [**13] that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

*Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011). The FAC plausibly alleges exactly that.

1.  The FAC alleges policy-level causation by Secretary Hunter

The FAC alleges that Secretary Hunter was not a mere passive manager, but the principal architect of DCYF's misguided accommodation policy. 7-ER-1604–06, ¶¶ 35–44. Appellees correctly note that § 1983 does not permit respondeat superior liability. But they misapply that principle to argue that policy-level officials cannot be held liable unless they personally execute each downstream violation. That is not the law.

As this Court has held:

> A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, **or** (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman* [*v. Cnty. of San Diego*,] 942 F.2d [1435,] 1447 [(9th Cir. 1991)] (internal quotation marks omitted).

6

"The requisite causal connection can be established . . . by **setting in motion a series of acts by others**," *id.* (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should [*1208] have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001. "**A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct [**13] that showed a reckless or callous indifference to the rights of others**." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

*Starr*, 652 F.3d at1207–08 (9th Cir. 2011) (emphasis added); *and see Owen v. Independence*, 445 U.S. 622, 651-52, 100 S. Ct. 1398, 63 L.Ed.2d 673 (1980) (municipal liability for policymaking "should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights."); *and see Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 969 (9th Cir. 2001) (claim against police chief sufficiently pled by allegations that he directed officers to use arrest forms without specifying name or violation.)

Here, Hunter:

- directed DCYF to be "as strict as allowed" in handling religious exemption requests, 7-ER-1605 ¶¶ 35–37;

7

- designed and implemented a "multi-prong approach" to discourage religious exemptions, 7-ER-1605 ¶¶ 38–41;

- characterized religious objections as something employees might "hide behind" and as "real or imagined," 7-ER-1605 ¶¶ 38–40; and

- sought ways to approve medical exemptions, but not religious ones, 7-ER-1606 ¶ 44, 7-ER-1608 ¶ 57.

These are not allegations of vicarious liability. They are allegations of **affirmative policy design and direction**. Causation was borne out in practice by DCYF's substantially higher accommodation rate for medical objectors than for religious objectors, despite identical unvaccinated status, underscoring that the resulting constitutional injuries were the foreseeable product of senior officials' policy decisions. 7-ER-1625 ¶¶ 155–159. Appellants' terminations were not isolated or accidental, but the foreseeable result of DCYF's centrally designed accommodation regime that systematically disadvantaged religious objectors relative to secular (medical) objectors. The discriminatory nature of DCYF's accommodation regime was not hypothetical but manifested in concrete and predictable outcomes. Specifically, the FAC alleges that DCYF accommodated medical exemptions at substantially higher rates than religious exemptions, even though both groups of unvaccinated employees posed the same asserted workplace risk. 7-ER-1625 ¶¶ 155–59. Religious objectors were

8

categorically denied accommodation pathways that were routinely available to medical objectors, including reassignment and continued employment. *Id*. ¶¶ 156–58. Thus, the challenged policy was not neutral in operation and its discriminatory effects were the foreseeable result of policy decisions by Hunter. *See Starr*, 652 F.3d at 1207–08.

The District Court discounted these allegations as "benign" internal communications and inferred lawful motives. *See* 1-ER-20–21. That was error. At the Rule 12(b)(6) stage, the court was required to accept the FAC's allegations as true and draw reasonable inferences in Appellants' favor, not Appellees'. Whether Hunter's directives reflected discriminatory intent is a fact-intensive question inappropriate for resolution on a motion to dismiss. *See Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696, 697 (9th Cir. 2013) (at pleading stage, court accepts as true allegation that defendant "intended to keep" plaintiff's money); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1065 (9th Cir. 2015), *quoting Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1119 (C.D. Cal 2009) ("Because they involve factual questions of intent, third party beneficiary claims are often not appropriate for resolution via motion to dismiss.")

9

2. The FAC plausibly alleges personal participation by Rodriguez and Ybarra

The FAC likewise plausibly alleges personal participation by Defendants Rodriguez and Ybarra, who acted both as supervisors developing the policies, and as subordinates to Hunter carrying them out. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (a supervisor is "liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.")

Here, the FAC alleges that Rodriguez and Ybarra:

- participated in implementing the accommodation framework designed by Hunter, 7-ER-1613–14 ¶¶ 83–90;

- oversaw or administered accommodation determinations, 7-ER-1584 ¶¶ 11–13; 7-ER-1613–14 ¶¶ 83–90; and

- enforced a regime that systematically treated religious objectors worse than secular (medical) objectors, 7-ER-1625 ¶¶ 156–59; 7-ER-1631–32 ¶¶ 204–09.

The district court erred by requiring Appellants to allege which official signed which termination letter or participated in each individual accommodation decision. *See* 1-ER19–20. Although such facts may be developed for trial, that level of granularity is not required at the pleading stage, particularly where

10

Appellees' misconduct involved centralized policy, not mere isolated acts. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

3.   The District Court improperly construed facts against Appellants

Rather than accept the FAC's allegations as true, the District Court discounted internal communications as "benign" and inferred lawful motives. *See* 1-ER-20–21.  That was error.

Whether Secretary Hunter's statements reflected religious animus, whether DCYF's accommodation regime was genuinely neutral, and whether discretion was exercised in a discriminatory manner are **fact-intensive questions**.  At the Rule 12(b)(6) stage, Appellants were required only to allege facts giving rise to a plausible inference of liability.  Appellants allege specific internal communications by the relevant decisionmakers that directly address handling religious exemption requests less favorably. 7-ER-1605 ¶¶ 35–37; 7-ER-1605 ¶¶ 38–41; 7-ER-1605 ¶¶ 38–40.  By resolving those factual issues against Appellants in advance of contrary evidence, at the pleading stage, the District Court erred.

4.   Conclusion as to Personal Participation

The FAC plausibly alleges that Defendants Hunter, Rodriguez, and Ybarra personally participated in Appellants' constitutional injuries by designing,

11

directing, and enforcing a discriminatory accommodation regime. Under settled Ninth Circuit law—including *Starr*, *Lacey*, and *OSU Student Alliance*—those allegations satisfy § 1983's personal-participation requirement. The District Court erred in dismissing Appellants' claims on this basis.

Because the FAC plausibly alleges policy-level causation sufficient to establish personal participation under § 1983, this Court must reach the merits of Appellants' Free Exercise, Equal Protection, and Procedural Due Process claims.

**D.     The First Amended Complaint Plausibly Alleges Violations of the Free Exercise Clause.**

The district court erred in concluding that the First Amended Complaint (FAC) failed to state a Free Exercise claim. Accepting the FAC's allegations as true—as required at the Rule 12(b)(6) stage—Appellants plausibly allege that DCYF implemented and enforced an accommodation regime that was neither neutral nor generally applicable, and that systematically treated religious objectors worse than similarly situated secular (medical) objectors.

This case does not challenge the facial validity of the Governor's Proclamation. It challenges DCYF's discretionary implementation of that Proclamation—an implementation that, as alleged, departed from religious neutrality and imposed special burdens on religious exercise.

12

1.      The FAC plausibly alleges lack of neutrality toward religion.

A law that burdens the free exercise of religion triggers strict scrutiny if it is not neutral and generally applicable. *Bates v. Fariborz Pakseresht*, 146 F.4th 772, 784 (9th Cir. 2025), citing *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531–32, 113 S. Ct. 2217, 124 L.Ed.2d 472 (1993). A law or policy lacks neutrality if its object "is to infringe upon or restrict practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. Nor can the court's inquiry "end with the text of the laws at issue," *id.* at 534: "Apart from the text, the effect of a law in its real operation is strong evidence of its object." *Id.* at 535.

Here, Appellants allege that DCYF leadership—including Secretary Hunter—characterized religious objections as something employees might "hide behind," described such objections as "real or imagined," and directed that religious exemption requests be handled "as strict as allowed." 7-ER-1604–06, ¶¶ 35–44. These allegations—along with the differential treatment of Appellants and similar faithholders from medically exempt employees—plausibly support an inference of official skepticism and hostility toward religious exercise.

At the pleading stage, Appellants need not prove animus or an opposing religious belief; they need only allege facts supporting a reasonable inference that their religion was *disfavored*. *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999) (emphasis added). The FAC does so.

13

2.    The FAC plausibly alleges lack of general applicability.

Even a facially neutral policy is subject to strict scrutiny if it is not generally applicable. In *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021), the Supreme Court held that a policy allowing discretionary exemptions "invites the government to consider the particular reasons for a person's conduct," and the government must treat religious exercise comparably to similar secular activity. Indeed, broad discretion may trigger strict scrutiny when used against a religious applicant even without any showing of animus. *Bates*, 146 F.4th 772 (9th Cir. 2025), *citing Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Of Educ.*, 82 F.4th 664 (9th Cir. 2023). Similarly, in *Tandon v. Newsom*, 593 U.S. 61, 62, 141 S. Ct. 1294, 209 L.Ed.2d 355 (2021) (*per curiam*), the Supreme Court explained that government regulations must treat religious exercise at least as favorably as secular activity which implicates the same asserted governmental interest—and it is no excuse that **some** secular activity was treated as harshly as the comparable religious activity: strict scrutiny applies "whenever they treat *any* comparable secular activity more favorably than religious exercise." (emphasis added).

Here, the FAC alleges that DCYF's asserted interest was preventing workplace risk from unvaccinated employees, yet DCYF accommodated unvaccinated employees with medical exemptions while denying comparable

14

accommodations to unvaccinated employees with religious exemptions. 7-ER-1625, ¶¶ 155–159. Under *Fulton* and *Tandon*, that disparity is sufficient to plausibly allege that DCYF's accommodation regime was not generally applicable and therefore strict scrutiny applies.

Appellees' anticipated contention that medical and religious exemptions are not proper comparators misapprehends the Free Exercise inquiry. The relevant comparison is not the reason for exemption, but whether the exempted conduct undermines the government's asserted interest in a similar way. *Tandon*, 593 U.S. at 62. Once DCYF permitted unvaccinated employees to remain employed for secular reasons, it could not refuse comparable treatment to religious objectors without triggering strict scrutiny.

Courts have long recognized this principle. In *Fraternal Order of Police v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999), then-Judge Alito explained that a police department could not grant secular exemptions while denying religious ones without demonstrating a compelling justification, because such differential treatment "devalues religious reasons" for conduct. That reasoning applies with equal force here, where the FAC alleges that DCYF accepted the same asserted workplace risk for medical objectors but refused to do so for religious objectors. 7-ER-1625 ¶¶ 155–159.

15

3.    The FAC alleges a substantial burden on religious exercise.

The FAC alleges that DCYF's discriminatory accommodation regime forced Appellants to choose between violating sincerely held religious beliefs and losing their employment. 7-ER-1621–1623, ¶¶ 130–145; 7-ER-1633, ¶ 217–219. Termination of employment for refusing to abandon religious beliefs constitutes a substantial burden on religious exercise. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525-27, 142 S. Ct. 2407, 213 L.Ed.2d 755(2022). At the pleading stage, that allegation suffices.

4.    Appellees' reliance on vaccine mandate cases is misplaced.

Appellees rely heavily on cases upholding vaccination mandates. Ans. Br. at 34-45. The District Court likewise misapplied cases which upheld vaccination mandates as generally constitutional—on their face—when dismissing Appellants' Free Exercise and Equal Protection claims, without addressing Appellants' allegations that DCYF administered exemptions and termination decisions in a non-neutral, discriminatory manner. *See* 1-ER-20; 1-ER-25.[1] Those cases are inapposite.

---

[1] The District Court relied on cases addressing the facial constitutionality of vaccination mandates, including *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Children's Health Defense, Inc. v. Rutgers, the State Univ. of New Jersey*, 93 F.4th 66 (3d Cir. 2024); *Kheriaty v. Regents of the Univ. of California*, 2022 WL 17175070 (9th Cir. Nov. 23, 2022); *Doe v. San Diego Unified School District*, 19 F.4th 1173 (9th Cir. 2021); and *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021).

16

Appellants do not allege that vaccine mandates are *per se* unconstitutional. They allege that DCYF's particular administration of exemptions was discriminatory and non-neutral. Courts routinely distinguish between facially neutral mandates and discriminatory implementation. *See Lukumi*, 508 U.S. at 534 ("[A] law neutral on its face may nonetheless violate the Free Exercise Clause if it targets religious conduct for distinctive treatment."); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1081 (9th Cir. 2015) ("[E]ven a neutral law of general applicability may violate the Free Exercise Clause if it is enforced in a discriminatory manner"); *Catholic League for Religious & Civil Rights v. City & County of San Francisco*, 624 F.3d 1043, 1050–51 (9th Cir. 2010) (*en banc*) (government action may violate the Free Exercise Clause where official conduct demonstrates hostility toward religion, even absent facial discrimination).

5. <u>Strict scrutiny cannot be resolved on the pleadings.</u>

Because the FAC plausibly alleges lack of neutrality and general applicability, strict scrutiny applies. Whether DCYF can satisfy that demanding standard is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss. *Ho by Ho v. S.F. Unified Sch. Dist.*, 965 F. Supp. 1316, 1325 (N.D. Cal. 1997); *and see Grutter v. Bollinger*, 539 U.S. 306, 327, 123 S. Ct. 2325, 156 L.Ed.2d 304 (2003) (in reviewing constitutional claims, "it is imperative that generalizations, based on and qualified by the concrete situations that gave rise

17

to them, must not be applied out of context in disregard of variant controlling facts.")

### 6. Conclusion as to Free Exercise

The FAC plausibly alleges that DCYF's accommodation regime was neither neutral nor generally applicable and imposed a substantial burden on religious exercise. The district court erred in dismissing Appellants' Free Exercise claim at the pleading stage, before the facts could be fully developed for strict scrutiny.

### E. The First Amended Complaint Plausibly Alleges Violations of the Equal Protection Clause.

The FAC also plausibly alleges that DCYF violated the Equal Protection Clause by intentionally treating religious objectors worse than similarly situated secular (medical) objectors.

Equal Protection and Free Exercise claims are analytically distinct. Where, as here, the FAC alleges intentional religious discrimination, Equal Protection provides an independent basis for relief.

### 1. Religion is a suspect classification.

Religion is a suspect classification under Equal Protection jurisprudence. Religion is a suspect class. *Saud v. Days*, 36 F.4th 949, 953 (9th Cir. 2022) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d

511 (1976)). Government action that intentionally discriminates on the basis of religion is subject to strict scrutiny. *Id.*

> 2. The FAC plausibly alleges differential treatment of similarly situated employees.

The FAC alleges two relevant classes:

1. Unvaccinated employees with religious exemptions; and

2. Unvaccinated employees with medical exemptions.

7-ER-1625 ¶¶ 155–156. Both classes posed the same supposed risk, yet DCYF treated them differently—providing accommodation pathways to medical objectors that were denied to religious objectors. 7-ER-1625 ¶¶ 156–159.

To prevail on an Equal Protection claim, plaintiffs must demonstrate that similarly situated individuals were treated differently and that the differential treatment was based on an impermissible classification or lacked a rational basis. *Ariz. Dream Act Coalition v. Brewer,* 855 F.3d 957, 966–68 (9th Cir. 2017); *Lee,* 250 F.3d at 686.

Here, religious and medical objectors were similarly situated with respect to DCYF's asserted interest—workplace risk posed by unvaccinated employees—yet were treated differently. 7-ER-1625 ¶¶ 155–59. That differential treatment was based on an impermissible classification and lacked rational basis. Once DCYF permitted employees to remain employed and

19

unvaccinated for secular reasons, it could not deny comparable treatment to religious objectors. That disparate treatment based on an impermissible classification lacked rational basis, so Appellants state an Equal Protection claim at the pleading stage.

    3.     <u>The FAC plausibly alleges discriminatory intent.</u>

Discriminatory intent need not be admitted or expressly stated to support an Equal Protection claim. Courts routinely infer intent from circumstantial evidence, including disparate outcomes, policy design, and contemporaneous statements by decisionmakers. *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266–68, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977); *and see United States v. Armstrong*, 48 F.3d 1508, 1513 (9th Cir. 1995) (direct showing of discriminatory intent is not always necessary to establish an Equal Protection claim, which may be proven circumstantially); *Washington v. United States Dep't of Homeland Sec.,* 598 F. Supp. 3d 1051, 1071 (E.D. Wash. 2021) (court considered circumstantial evidence to determine whether racial discrimination was a motivating factor); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).

Here, the FAC alleges a consistent pattern of adverse treatment directed at religious objectors, leadership directives to treat religious exemptions "as strict as allowed," skepticism toward religious objections, and accommodation

outcomes that systematically favored medical objectors over religious objectors. 7-ER-1604–06, ¶¶ 35–44; 7-ER-1625, ¶¶ 155–159. Taken together, these allegations plausibly support an inference of intentional religious discrimination sufficient to state an Equal Protection claim.

4.     <u>Equal Protection Claims are not Duplicative of Free Exercise Claims</u>

The district court erred to the extent it treated Appellants' Equal Protection claim as duplicative, relying on the same neutrality and mandate-validity analysis applied to the Free Exercise claim, rather than evaluating whether Appellants plausibly alleged intentional religious discrimination under Equal Protection standards. 1-ER-20–22. The Free Exercise Clause does not relieve an individual from compliance with a neutral law of general applicability, but religious discrimination remains independently prohibited by the Equal Protection Clause. *Washington v. Trump,* 847 F.3d 1151, 1167 (9th Cir. 2017); *and see Emp't Div. v. Smith*, 494 U.S. 872, 901, 110 S. Ct. 1595, 108 L.Ed.2d 876 (1990) ("the Free Exercise Clause protects values distinct from those protected by the Equal Protection Clause."); *Lukumi*, 508 U.S. at 540-42 (laws targeting religious conduct violate both the Free Exercise Clause and the Equal Protection Clause, which provide distinct protections).

### 5. Conclusion as to Equal Protection

The FAC plausibly alleges that DCYF intentionally treated religious objectors less favorably than similarly situated secular objectors, 7-ER-1625, ¶¶ 155-59, and that policy-level directives targeted religious exemptions and favored secular exemptions. 7-ER-1604–06, ¶¶ 35-44; 7-ER-1608, ¶ 57. That states an Equal Protection claim, and dismissal at the pleading stage was error.

## F. Qualified Immunity Does Not Bar Appellants' Claims.

Appellees argue that even if the FAC plausibly alleges constitutional violations, the individual defendants are entitled to qualified immunity. That argument fails at both steps of the qualified-immunity analysis and rests on the same mischaracterizations of the pleadings and governing law that pervade Appellees' Answer Brief. *See* Ans. Br. at 49–58.

Qualified immunity shields officials **only** if (1) the facts alleged do not make out a constitutional violation, or (2) the right at issue was not clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011). Where, as here, the FAC plausibly alleges violations of clearly established Free Exercise, Equal Protection, and Procedural Due Process principles, dismissal on qualified-

22

immunity grounds at the pleading stage is improper. *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018).

1.   At the pleading stage, the Court must accept the FAC's allegations as true.

Appellees' qualified-immunity argument improperly asks this Court to resolve factual disputes and credit Appellees' version of events over Appellants' allegations.  That is not the correct qualified-immunity inquiry on a Rule 12(b)(6) record.  *Starr*, 652 F.3d at 1205–06.

At this stage, the Court must accept the FAC's well-pleaded allegations as true and draw all reasonable inferences in Appellants' favor. *Starr*, 652 F.3d at 1205–06; *Keates*, 883 F.3d at 1234. Where the alleged conduct, if proven, would violate clearly established constitutional rights, qualified immunity cannot support dismissal. *Keates*, 883 F.3d at 1234–35.

As set forth above, the FAC alleges that DCYF officials designed and enforced a discretionary accommodation regime that systematically disadvantaged religious objectors relative to similarly situated secular objectors, denied individualized process, and resulted in termination of protected public employment.  7-ER-1604–06 ¶¶ 35–44; 7-ER-160 ¶ 57; 7-ER-1613–14 ¶¶ 83–90; 7-ER-1621–23 ¶¶ 130–45; 7-ER-1625 ¶¶ 155–59; 7-ER-1631–32 ¶¶ 204–09. Those allegations are sufficient to state constitutional violations. Appellees'

23

disagreement with those allegations is a matter for summary judgment or trial, not qualified immunity at the pleading stage. *Keates*, 883 F.3d at 1234–35.

2.     The FAC alleges violations of clearly established constitutional rights.

The second step of the qualified-immunity analysis asks whether the constitutional rights at issue were clearly established at the time of the challenged conduct. *Pearson*, 555 U.S. at 232. Importantly, the inquiry does **not** require a prior case with identical facts. Officials are on notice that their conduct is unlawful where the constitutional principle is clear, even if the precise factual scenario is novel. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.") (*cited in Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1123 (2023)).

The District Court erroneously relied on cases upholding the facial validity of other vaccination mandates, rather than the clearly established law governing discriminatory implementation and exemption regimes.  Appellees cannot plausibly contend that the law governing discriminatory exemption regimes was unsettled at the time of the challenged conduct. Well before the events at issue, the Supreme Court made clear that when the government creates a system of discretionary or categorical secular exemptions, it must extend comparable

24

treatment to religious exercise. *Fulton*, 593 U.S. at 533–34. Likewise, in *Tandon*, 593 U.S. at 62, the Court reaffirmed that religious exercise must be treated at least as favorably as comparable secular conduct, and that comparability turns on whether the activities pose similar risks with respect to the government's asserted interest.

Under those decisions, no reasonable official could believe it was constitutionally permissible to accommodate unvaccinated employees for secular reasons while denying comparable accommodations to unvaccinated employees with religious exemptions. Accepting the FAC's allegations as true, DCYF's accommodation regime did exactly that. 7-ER-1625 ¶¶ 155–59. *Fulton* and *Tandon* therefore place the constitutional violation alleged here "beyond debate" for purposes of qualified immunity. *al-Kidd*, 563 U.S. at 741.

The Equal Protection violation alleged here was also clearly established. For decades, the Supreme Court has held that discriminatory intent may be inferred from circumstantial evidence, including disparate outcomes, policy design, and contemporaneous statements by decisionmakers. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (holding that under Section 1983, plaintiff must allege

25

facts plausibly showing that defendants acted with an intent or purpose to discriminate based on membership in a protected class).

In light of that clearly established law, no reasonable official could believe that implementing a policy that systematically disadvantaged religious objectors—while favoring similarly situated secular objectors—would escape constitutional scrutiny merely because discriminatory intent was not expressly admitted. Accepting the FAC's allegations as true, the Equal Protection violation alleged here was clearly established at the time of the challenged conduct, and qualified immunity is therefore unavailable.

> a. *Free Exercise and Equal Protection Rights were clearly established.*

Long before 2021, it was clearly established that the government may not administer a facially neutral policy in a manner that **favors secular exemptions over religious ones** or that reflects hostility toward religious belief. *See Lukumi*, 508 U.S. at 533–46 (1993); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 638–40, 138 S. Ct. 1719, 201 L. Ed. 2d 35 (2018). It was likewise clearly established that intentional discrimination based on religion violates the Equal Protection Clause. *Dukes*, 427 U.S. at 303; *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).

26

The FAC alleges that DCYF officials **accommodated medical exemptions at substantially higher rates than religious exemptions**, notwithstanding identical unvaccinated status, and did so pursuant to policy-level directives. 7-ER-1625, ¶¶ 155–159. It further alleges official statements and directives reflecting skepticism toward religious objections and encouragement that employees not "hide behind" religious exemptions. 7-ER-1605, ¶¶ 38–41. Accepting those allegations as true, no reasonable official could believe that such conduct complied with clearly established constitutional law. *Hope*, 536 U.S. at 739; *al-Kidd*, 563 U.S. at 741.

Appellees' reliance on cases upholding vaccination mandates does not alter this analysis. Those cases address the facial validity of neutral mandates, not the discriminatory administration of exemption regimes or the presence of religious animus. *See* Ans. Br. at 34–45. Qualified immunity does not permit officials to disregard clearly established constitutional limits simply because the broader policy context involves public health. *Hope*, 536 U.S. at 739.

Accordingly, Appellees cannot invoke qualified immunity to shield conduct that contravened well-settled Free Exercise and Equal Protection principles long before the COVID-19 pandemic.

      b.    *Procedural Due Process rights were clearly established.*

27

It was also clearly established that public employees with a protected property interest in continued employment are entitled to notice and an opportunity to be heard before termination, except in extraordinary circumstances not alleged here. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985); *Matthews v. Harney Cnty.*, 819 F.2d 889, 891–92 (9th Cir. 1987).

The FAC alleges that Appellants were permanent public employees terminable only for cause and that DCYF terminated them without any meaningful pre-termination hearing or individualized opportunity to contest accommodation denials. 7-ER-1621–23, ¶¶ 130–145; 7-ER-1633, ¶¶ 217–219. Accepting those allegations as true, they describe a violation of clearly established procedural due-process law. *Loudermill*, 470 U.S. at 542–46.

No reasonable official could believe that summary termination of protected public employees—based on individualized accommodation determinations—without notice or an opportunity to be heard was constitutionally permissible. *Loudermill*, 470 U.S. at 542–46; *Keates*, 883 F.3d at 1234–35.

3.    Qualified Immunity Cannot be Resolved on this Record

Even where the law is clearly established, qualified immunity is generally inappropriate for resolution on a motion to dismiss when the analysis turns on

28

disputed facts, intent, or the operation of a challenged policy. *Keates*, 883 F.3d at 1234–35; *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).

Here, whether DCYF's accommodation regime was neutral, whether discretion was exercised discriminatorily, whether officials acted with religious animus, and whether meaningful process was afforded are all fact-intensive questions. The FAC plausibly alleges answers unfavorable to Appellees. 7-ER-1604–06 ¶¶ 35–44; 7-ER-1608, ¶ 57; 7-ER-1613–14 ¶¶ 83–90; 7-ER-1621–23 ¶¶ 130–45; 7-ER-1625 ¶¶ 155–59. That alone precludes dismissal on qualified-immunity grounds at this stage. *Keates*, 883 F.3d at 1234–35.

4.  Appellees' Qualified Immunity argument merely reargues the merits.

Finally, Appellees' qualified-immunity argument largely repackages their merits arguments under a different label. Appellees contend that their conduct was reasonable because the Proclamation was lawful and the pandemic serious. *See* Ans. Br. at 49–58. But qualified immunity does not ask whether a defendant's conduct was understandable in the abstract; it asks whether the conduct violated clearly established constitutional rights. *al-Kidd*, 563 U.S. at 735.

Accepting the FAC's allegations as true—as the Court must—Appellees enforced a policy that discriminated against religious objectors and denied protected employees basic process. 7-ER-1604–06 ¶¶ 35–44; 7-ER-1608 ¶ 57; 7-ER-1613–14 ¶¶ 83–90; 7-ER-1621–23 ¶¶ 130–145; 7-ER-1625 ¶¶ 155–159.

That conduct was clearly unconstitutional under long-standing precedent. *Hope*, 536 U.S. at 739; *Loudermill*, 470 U.S. at 542–46. Qualified immunity does not shield such conduct.

5. Conclusion as to Qualified Immunity

Because the FAC plausibly alleges violations of clearly established Free Exercise, Equal Protection, and Procedural Due Process rights, and because resolution of Appellees' qualified-immunity defense would require factual determinations inappropriate at the pleading stage, qualified immunity does not provide a basis for dismissal. *Pearson*, 555 U.S. at 232; *Keates*, 883 F.3d at 1234–35.

**G.     The District Court Erred in Denying Leave to Amend**

Even if this Court were to conclude that the First Amended Complaint (FAC) fell short in any respect, the district court erred by dismissing Appellants' federal claims with prejudice and denying leave to amend.

Leave to amend should be freely granted unless amendment would be futile, prejudicial, or sought in bad faith. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227,  9 L. Ed. 2d 222 (1962); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*). Dismissal with prejudice is improper unless it is "clear . . . that the complaint could not be saved by any amendment." *Eminence Capital, LLC*

30

*v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). That demanding standard was not met here.

The district court denied leave to amend on the ground that amendment would be futile. *See* 1-ER-28–29. But that conclusion rested not on an inability to plead additional facts, but on the court's legal determinations that Appellants had failed to allege personal participation, failed to plead plausible constitutional violations, and failed to allege an ongoing violation sufficient to support prospective relief. *Id.*

As shown above, that determination was fully erroneous. Where dismissal rests on an incorrect legal standard or an unduly restrictive reading of the pleadings, denial of leave to amend is an abuse of discretion. *Lopez*, 203 F.3d at 1130–31.

The FAC already contains detailed allegations regarding:

- the design and implementation of DCYF's accommodation regime,

- the disparate treatment of religious and medical objectors,

- the roles of individual defendants in enforcing that regime, and

- the absence of meaningful procedural protections before termination.

7-ER-1604–06 ¶¶ 35–44; 7-ER-1608 ¶ 57; 7-ER-1613–14 ¶¶ 83–90; 7-ER-1621–23 ¶¶ 130–45; 7-ER-1625, ¶¶ 155–159; 7-ER-1631–32 ¶¶ 204–09. To the extent any greater specificity might be required—regarding, for example, the mechanics

31

of accommodation determinations, the comparative treatment of objectors, or the ongoing effects of unconstitutional termination—that can readily be addressed through amendment. Some such information may lie within Defendants' sole control. Denying leave to amend before discovery in such circumstances is strongly disfavored. *Eminence Capital*, 316 F.3d at 1052.

This case has not involved repeated amendments, undue delay, or bad faith. Appellants amended once as of right in response to the district court's initial dismissal order and sought to proceed on their core constitutional claims. *See* 2-ER-150–58; 7-ER-1581–1635 (FAC). There is no indication that further amendment would prejudice Defendants or unduly delay proceedings. Where, as here, plaintiffs have not previously been afforded a meaningful opportunity to amend after the District Court indicates its concerns, denial of leave to amend is improper. *Lopez*, 203 F.3d at 1130.

The Ninth Circuit has repeatedly emphasized that leave to amend should be granted with "extreme liberality," particularly in civil rights cases where plaintiffs may lack access to internal policy details prior to discovery. *Eminence Capital*, 316 F.3d at 1051–52; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

Here, Appellants allege constitutional violations arising from an internal, discretionary accommodation regime administered by senior officials. If the FAC

32

were deemed deficient in any respect, justice required granting leave to amend rather than foreclosing Appellants' claims at the pleading stage.

Because the District Court's denial of leave to amend rested on erroneous legal conclusions and because Appellants could readily amend to cure any perceived pleading deficiencies, dismissal with prejudice and without leave to amend was an abuse of discretion. At minimum, this Court should reverse the denial of leave to amend and remand with instructions to permit further amendment.

### III. CONCLUSION

For the reasons set forth above, the District Court erred in dismissing Appellants' federal constitutional claims and in denying leave to amend. The First Amended Complaint plausibly alleges that DCYF officials designed, directed, and enforced a discriminatory accommodation regime that violated Appellants' clearly established rights under the Free Exercise, Equal Protection, and Procedural Due Process Clauses. Appellees' threshold defenses—abandonment, lack of personal participation, waiver, and qualified immunity—misstate the record and governing law and provide no basis for affirmance.

Accordingly, this Court should reverse the judgment below and remand for further proceedings, including amendment if necessary, discovery, and trial on the merits.

RESPECTFULLY SUBMITTED this 23rd day of January 2026.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**

*s/ Nathan J. Arnold*
NATHAN J. ARNOLD
WSBA No. 45356
720 Seneca Street, Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221
Nathan@ajalawyers.com
*Counsel for Appellants*

34

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s):** 25-3282

The undersigned attorney or self-represented party states the following:

[  ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Columbo, et al. v. Washington Department of Natural Resources, et al., Case No. 25-3863, Taylor, et al. v. Washington Department of Corrections, et al., Case No. 24-7120, Luxton v. Washington State Department of Veterans Affairs, Case No. 25-3542, Cherry, et al. v. Washington Department of Fish & Wildlife, et al., Case No. 25-4763, Nilsen, et al. v. University of Washington, et al., Case No. 24-7640. The aforementioned cases before this Court all share similar originating facts, the most significant being that an employer terminated an employee who did not comply with a job requirement that they be injected with a COVID-19 Vaccine.

**Signature:** /s/ Nathan J. Arnold, WSBA #45356          **Date: January 23, 2026**
*(use "s/[typed name]" to sign electronically-filed documents)*

35

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance**

Instructions for this form:

http://www.ca9.uscourts.gov/forms/form18instructions.pdf

**9th Cir. Case Number(s)**        25-3282

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6737 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

**Signature:** *s/ Nathan J. Arnold*＿＿＿＿＿＿＿＿＿＿ **Date:** January 23, 2026